## MACKIN & Another *v.* UNITED STATES.

CERTIFICATE OF DIVISION IN OPINION FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Argued March 2, 3, 1886.—Decided March 22, 1886.

A crime punishable by imprisonment in a State prison or penitentiary, with or without hard labor, is an infamous crime, within the provision of the Fifth Amendment of the Constitution, that "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury."

This was an information filed by the District Attorney on January 20, 1885, in the District Court of the United States for the Northern District of Illinois, on § 5440 of the Revised Statutes, which is as follows:

" If two or more persons conspire, either to commit any

offence against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not less than $1000, and not more than $10,000, and to imprisonment not more than two years."

The information contained seven counts, which were respectively for conspiracies to commit offences within § 5512, § 5511, and § 5403. The substance of the offence, as alleged in different forms in the various counts, was the breaking open of a package containing a return, by the judges and clerks of election, of an election held in a district of the city of Chicago to choose a Representative in Congress and certain State and county officers; the alteration of the certificate of the result of the election, the poll book, the tally list of the votes cast for each candidate, and a large number of the ballots; and the substitution of spurious papers in their stead.

In the District Court, the defendants were tried by a jury and convicted, and on March 21, 1885, were sentenced to pay a fine of $5000 each, and to be imprisoned for two years in the penitentiary of the State of Illinois at Joliet in said District.

A writ of error was sued out by the defendants, returnable at May Term, 1885, of the Circuit Court. At the hearing in that court, the two judges presiding were divided in opinion upon five questions of law, and, at the request of the counsel for both parties, certified to this court those questions, two of which were as follows:

" 1. Whether the crimes, or any of them, charged against the defendants in the counts of the information, are infamous crimes, within the meaning of the Fifth Article of Amendment to the Constitution of the United States?

" 2. Whether the defendants can or not be held to answer in the courts of the United States for the crimes charged, or any of them, against them herein, otherwise than on the presentment or indictment of a grand jury?"

The other questions certified related to the sufficiency of the several counts as setting forth any offence, and need not be particularly stated.

*Mr. John C. Richberg* and *Mr. Samuel Shellabarger* for plaintiffs in error.

*Mr. Assistant Attorney General Maury* (with whom was *Mr. Attorney General* on the brief) for defendants in error. *Mr. John B. Hawley* and *Mr. Richard S. Tuthill*, also filed a brief.

Mr. Justice GRAY, after stating the case as above reported, delivered the opinion of the court.

In *Ex parte Wilson*, 114 U. S. 417, it was adjudged by this court, upon full consideration, that a crime punishable by imprisonment for a term of years at hard labor was an infamous crime, within the meaning of the Fifth Amendment of the Constitution of the United States, which declares that "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury;" and therefore could not be prosecuted by information in any court of the United States.

The reasons for that judgment, without undertaking to recapitulate them in detail, or to restate the authorities cited in their support, may be summed up as follows: The Fifth Amendment had in view the rule of the common law, governing the mode of prosecuting those accused of crime, by which an information by the Attorney General, without the intervention of a grand jury, was not allowed for a capital crime, nor for any felony; rather than the rule of evidence, by which those convicted of crimes of a certain character were disqualified to testify as witnesses. In other words, of the two kinds of infamy known to the law of England before the Declaration of Independence, the Constitutional Amendment looked to the one founded on the opinions of the people respecting the mode of punishment, rather than to that founded on the construction of law respecting the future credibility of the delinquent. The leading word "capital" describing the crime by its punishment only, the associated words "or otherwise infamous crime" must, by an elementary rule of construction, be held to include any crime subject to an infamous punishment, even if they should be held to include also crimes infamous in their nature, inde-

pendently of the punishment affixed to them.   Having regard
to the object and the terms of the Amendment, as well as to
the history of its proposal and adoption, and to the early under-
standing and practice under it, no person can be held to answer,
without presentment or indictment by a grand jury, for any
crime for which an infamous punishment may lawfully be im-
posed by the court.   The test is whether the crime is one for
which the statutes authorize the court to award an infamous
punishment, not whether the punishment ultimately awarded is
an infamous one; when the accused is in danger of being sub-
jected to an infamous punishment if convicted, he has the right
to insist that he shall not be put upon his trial, except on the
accusation of a grand jury.   The Constitution protecting every
one from being prosecuted in a court of the United States, with-
out the intervention of a grand jury, for any crime which is
subject by law to an infamous punishment, no declaration of
Congress is needed to secure, or competent to defeat, the con-
stitutional safeguard.   What punishments shall be considered
as infamous may be affected by the changes of public opinion
from one age to another ; and for more than a century, impris-
onment at hard labor in the State prison or penitentiary has
been considered an infamous punishment, in England and
America.

The argument by which the soundness of those conclusions
has been now impugned is, in substance, the same as the one
submitted in that case, and has not convinced us that there was
any error in the decision.

The judgments in *Hurtado* v. *California*, 110 U. S. 516, and
*United States* v. *Waddell*, 112 U. S. 76, on which the counsel
for the government rely, are quite in accord with the decision
in *Wilson's Case*.

In *Hurtado* v. *California*, the point decided was that the
provision of the Fourteenth Amendment of the Constitution,
which forbids any State to " deprive any person of life, liberty
or property, without due process of law," did not require an
indictment by a grand jury in a prosecution for a capital crime
in a State court.   One of the reasons for so deciding was that
the insertion in the Fifth Amendment, addressed to the United

States only, of a specific provision requiring indictments for capital or otherwise infamous crimes, as well as the general provision securing due process of law, showed that the latter was not intended to include the former; and the former must be taken to have been purposely omitted in the Fourteenth Amendment.    110 U. S. 534.

In *United States* v. *Waddell*, the prosecution was upon an act of Congress providing that any person convicted under it should be fined and imprisoned, and should "moreover be thereafter ineligible to any office or place of honor, profit or trust, created by the Constitution or laws of the United States." The only suggestion in the opinion, bearing upon the question before us, was the expression of a serious doubt whether the disqualification so declared did not make the crime an infamous one.    112 U. S. 82.    That disqualification was in the nature of an additional punishment, which could only take effect upon conviction.    *Kurtz* v. *Moffitt*, 115 U. S. 487, 501.

By the express provisions of acts of Congress, either a sentence " to imprisonment for a period longer than one year," or a sentence "to imprisonment and confinement to hard labor," may be ordered to be executed in a State prison or penitentiary; and the convict, while thus imprisoned, is "subject to the same discipline and treatment as convicts sentenced by courts of the State."    Rev. Stat. §§ 5541, 5542, 5539; *Ex parte Karstendick*, 93 U. S. 396.

How far a convict sentenced by a court of the United States to imprisonment in a State prison or penitentiary, and not in terms sentenced to hard labor, can be put to work, either as part of his punishment, or as part of the discipline and treatment of the prison, was much discussed at the bar, but we have not found it necessary to dwell upon it, because we cannot doubt that at the present day imprisonment in a State prison or penitentiary, with or without hard labor, is an infamous punishment.    It is not only so considered in the general opinion of the people, but it has been recognized as such in the legislation of the States and Territories, as well as of Congress.

In most of the States and Territories, by constitution or

statute, (as is shown in the supplemental brief of the plaintiffs in error),* all crimes, or at least statutory crimes, not capital, are classed as felonies or as misdemeanors, accordingly as they are or are not punishable by imprisonment in the State prison or penitentiary.

The acts of Congress, referred to at the argument, clearly show that the opinion of the legislative branch of the national government, so far as it has been expressed, is in full accordance with what we hold to be the true judicial construction of the Constitution.

The provision of § 1022 of the Revised Statutes of the United States, by which " all crimes and offences " against the elective franchise or the civil rights of citizens, under §§ 5506–5532, " which are not infamous, may be prosecuted either by indictment, or by information filed by a district attorney," does not undertake to define which of those crimes and offences are infamous, and therefore not to be prosecuted by information, but leaves that to be regulated by the paramount authority of the Constitution.

So the provisions of §§ 1044 and 1046 of the Revised Statutes, in the nature of a statute of limitations, by which no person can

---

* On that brief the following are referred to :

States : Alabama, Code 1876, §§ 151, 4095; Arkansas, Digest 1884, § 1493 ; California, Penal Code 1872, § 17 ; Colorado, Constitution, Art 18, § 4; Georgia, Code 1882, § 4304; Illinois, Rev. Stat. 1874, ch. 38, § 277 (div. 2, § 5); Indiana, Rev. Stat. 1881, § 1573 ; Iowa, Code 1873, § 4104 ; Kentucky, Gen. Stat. 1883, ch. 29, art. 1, § 1 ; Maine, Rev. Stat. 1883, ch. 131, § 9 ; Massachusetts, Pub. Stat. 1832, ch. 210, § 1 ; Michigan, 2 Howells Stat. 1882, § 9430 ; Mississippi, Code 1880, § 3104; Missouri, Rev. Stat. 1879, § 1676 ; New York, Rev. Stat. (Ed. 1882), pt. 4, ch. 1, tit. 7, §§ 30, 31 ; Nebraska, Compiled Stat. 1881, pt. 3, § 247 ; Oregon, Gen. Laws 1874, p. 341, § 3; Tennessee, Code 1884, § 6051 ; Vermont, Rev. Laws, 1880, § 4334; Virginia, Code 1873, ch. 195, § 1 ; West Virginia, Code 1868, ch. 152, § 1 ; Wisconsin, Rev. Stat. 1878, § 4637.

Territories: Arizona, Compiled Laws 1877, ch. 11, § 4 ; Dakota, Penal Code 1877, ch. 1, § 5 ; Idaho, Rev. Laws 1874–5, p. 364, § 3; New Mexico, Compiled Laws 1884, § 663 ; Utah, Compiled Laws 1876, tit. 21, § 15; Washington, Stat. 1855, p. 78, § 11 ; Wyoming, Compiled Laws 1876, ch. 16, § 1.

To these may be added the following : Florida, Digest 1872, ch. 52, § 1; Minnesota, Stat. 1878, ch. 91 § 2; Ohio, Rev. Stat. 1880, § 6795.

be prosecuted, tried or punished for any offence not capital, or for any crime under the revenue laws or the slave-trade laws, "unless the indictment is found or the information is instituted" within a certain time after the committing of the crime or offence, do not prescribe or indicate what offences must be prosecuted by indictment, and what may be prosecuted by information.

Nor can any such effect be attributed to the similar phrase in the act of July 5, 1884, ch. 225, by which no person shall be prosecuted, tried or punished for any offence under the internal revenue laws, "unless the indictment is found or the information instituted within three years next after the commission of the offence, in all cases where the penalty prescribed may be imprisonment in the penitentiary, and within two years in all other cases." 23 Stat. 122. The including, in a single clause, of two classes of offences, one of which may be prosecuted by information, is a sufficient reason for mentioning informations as well as indictments, without attributing to Congress an intention that both classes should be prosecuted by information; and imprisonment in the penitentiary is made the line of distinction between the two classes.

But the most conclusive evidence of the opinion of Congress upon this subject is to be found in the act conferring on the Police Court of the District of Columbia "original and exclusive jurisdiction of all offences against the United States, committed in the District, not deemed capital or otherwise infamous crimes, that is to say, of all simple assaults and batteries, and all other misdemeanors not punishable by imprisonment in the penitentiary." Act of June 17, 1870, ch. 133, § 1, 16 Stat. 153; Rev. Stat. D. C. § 1049. "Infamous crimes" are thus in the most explicit words defined to be those "punishable by imprisonment in the penitentiary."

The result is, that all the crimes charged against the defendants in this information are infamous crimes, within the meaning of the Fifth Amendment of the Constitution, and that the defendants cannot be held to answer in the courts of the United States for any of those crimes, otherwise than on a presentment or indictment of a grand jury; and therefore the first ques-

tion certified must be answered in the affirmative, and the second question in the negative, and the other questions certified become immaterial.

*Ordered accordingly.*