Mr. Justice James
delivered the opinion of the court:
This is an action for false imprisonment. At the time of the alleged wrong the plaintiff was a student at Howard University, in this District, of which the defendant Patton was president. The defendant Hunt was employed there as matron, and the defendant Rhodes was a police officer.
It appears that the plaintiff, upon suspicion and private accusation that she had stolen $15 from a fellow student, was arrested, without process of warrant, by the defendant Rhodes, at the University, taken by him to his own residence, where she was searched by his wife and daughter, and thence taken by him, still without warrant, to the police station, and there locked up for seven hours, and finally was discharged from custody without further prosecution. The declaration alleges that the defendants Patton and Hunt, as well as the defendant Rhodes, arrested the plaintiff, and that without probable cause and without any lawful warrant.
The defendants Patton and Hunt, jointly, and the defendant Rhodes, separately, pleaded not guilty. The verdict and judgment was against all of the defendants for the sum of $500 and costs; and the appeal to this court is upon exceptions to the rulings at the trial.
The first exception is to the refusal of the court, at the *539 close of the plaintiff’s evidence, to instruct the jury that, on that evidence, the plaintiff was not entitled to recover, and that they should find a verdict for the defendants. Upon consideration of the evidence set out in this exception we are of opinion that the judge was right in refusing to take the case away from the jury. It is not important to restate this evidence, as the defendants introduced evidence on their part, and the case really turns upon the rulings and exceptions which followed.
At the close of the defendants’ evidence, the defendants Patton and Hunt, hy their counsel, requested the court to instruct the jury as follows, each instruction being separately asked:
“3. The jury are instructed that, as to the defendant William W. Patton, their verdict must he not guilty.
“ 2. The jury are instructed that, as to the defendant Mary E. Hunt, their verdict must be not guilty.
“3. To justify a verdict of guilty against either President Patton or Mrs. Hunt, the jury must find that the one so to be found guilty personally restrained the plaintiff of her liberty by force or threats, or that he or she directed the officer to take the plaintiff into custody; and in the absence of such proof the verdict must be not guilty.”
Neither the first nor second of these instructions could be properly given, inasmuch as there was evidence as to both Patton and Hunt which should go to and he determined by the jury. The third prayer does not correctly state the grounds upon which those parties might he liable. They might be made liable by conduct in the premises other .than personally making the arrest, or giving directions to .the officer to make such arrest. The rule on this subject will be considered in connection with the instructions actually given by the court. It is only necessary to add here that evidence affecting these two defendants, according to the true rule, was given, which must he left to the jury, and that it was for that reason that the first and second prayers could not be granted.
*540 The fourth and fifth instructions asked by those two defendants, and refused by the court, were as follows:
“4. If the jury find from the evidence that before the plaintiff was arrested President Patton informed the police officer that he, Patton,- would give no instructions in the premises, and that should he, the police officer, arrest the plaintiff, such act must be upon his own responsibility entirely, and that said defendant, Patton, was not present at the arrest, and gave no instructions concerning the same, or at any time took part in the restraint or imprisonment of the plaintiff after the arrest by the police officer, then the verdict, as to said defendant Patton, must be not guilty; and the fact that he first informed the officer that plaintiff was suspected of the larceny on account of which the arrest was made, and requested him to make an investigation and endeavor to discover the thief, is immaterial to this cause.
“ 5. If the jury find from the evidence that before the arrest of the plaintiff by Officer Rhodes he was informed by Mrs. Hunt that she would not take any responsibility in the matter, and that she had no authority to give directions to make the arrest, and that she must leave that to higher authority, and that thereupon she caused President Patton to be summoned, and that he, Patton, after being informed of the circumstances, then and there informed the police officer that they (meaning himself and Mrs. Hunt) knew nothing about such matters; that he, the police officer, was presumed to know the proper course to be pursued, and that in whatever he did concerning the plaintiff he must act solely on his own responsibility as a police officer, and that said officer then and there assumed such responsibility, and that Mrs. Hunt took no other part in said arrest, and was not present thereat, and did not afterward take part in the restraint or imprisonment of the plaintiff, the verdict should be not guilty as to Mrs. Hunt; and the fact that before such arrest and before the statement by Dr. Patton to the officer of their refusal to direct the arrest or assume responsibility therefor, Mrs. Hunt expressed the opinion that the plaintiff was guilty, and that if searched the money would be found *541 upon her person, does not render her liable in this action, or make her a party to the imprisonment of the plaintiff.”
In the fourth prayer the court was asked to separate from the rest of the evidence the single fact that the defendant Patton had informed the officer that plaintiff was suspected of the larceny, on account of which the arrest was made, and requested him to make an investigation and endeavor to discover the thief, and to instruct the jury that this fact was immaterial in forming a conclusion as to what the defendant had done to make himself liable.
The question to be determined was whether the defendant had done acts which amounted to a participation in the arrest; and it was not admissible that the court should instruct the jury as to the materiality of this single fact in determining whether other facts amounted to participation. While it might be true that of itself it did not constitute participation in the arrest, its effect upon their belief as to evidence going to show further action on the part of defendant and therefore its materiality, is not to be determined by the court. This mode of separating one item of evidence from the body of the evidence is not admissible.
The same may be said of the effect of the concluding part of the fifth prayer. That separate fact there set out is less clearly open to the objection which we have stated; but the effect of such an instruction would be to lead the jury to understand that the fact set forth was immaterial in arriving at a conclusion as to what the defendant Hunt had done. We think the court was right in refusing to grant either of these instructions as asked.
We come now to a very important question presented in the third bill of exceptions. The defendant Rhodes, by his his attorney, requested the court to grant the following instructions:
“ 1. If the jury find from the evidence that at the time of making the arrest complained of the defendant Rhodes had reasonable ground to believe that the plaintiff was guilty of the offense with which she was charged, such *542 arrest was justifiable, and the said defendant is not liable in this action.
“ 2. In determining whether the defendant Rhodes had reasonable ground for making the arrest complained of by the plaintiff, the jury is to consider only the facts as they appeared to the said defendant at the time of making such arrest, and not as they may have subsequently developed.”
The court refused to grant either of these instructions as asked, but, after exceptions taken, granted the second one with this modification:
“In determing whether the defendant Rhodes had reasonable ground for making the arrest complained of by the plaintiff, the jury, in considering the question of damages, is to consider only the facts as they appeared to the said defendant at the time of making such arrest, and not as they may subsequently be developed.”
To the granting of this instruction, as modified, the said defendant excepted.
These exceptions raise the question, when is an officer protected in making an arrest without a warrant? The common-law rule as to arrest without warrant is stated by Savage, Ch. J., in Holley vs. Mix, 3 Wend., 353: “Ifa felony has in fact been committed by the person arrested, the arrest may be justified by any person without warrant, whether there is time to obtain one or not. If an innocent person is arrested upon suspicion by a private individual, such individual is excused, if a felony was in fact committed and there was reasonable ground to suspect tbe person arrested. But if no felony was committed by any one, and a private individual arrest without a warrant, such arrest is illegal, though an officer would be justified if he acted upon information from another which he had reason to rely on.”
And in the case of Barrett vs. Heider, in this, court (unreported), Mr. Justice Olin, speaking for the court, said; “Neither a private person nor an officer can arresta person charged with a crime of less degree than a felony with *543 out a warrant, if not committed in their presence. An officer has no right to arrest a person without warrant, guilty of a misdemeanor, after the offence has been committed." Citing People vs. Adler, 3 Parker, 249; 2 Hawk., P. C., 121, and 2 Carr. & P., 585.
It is urged that this rule of the common law is to be applied according as crimes are graded by the common law as felonies or misdemeanors; and that, as petit larceny, the crime of which the plaintiff was accused, is at common law a felony, the officer was justified in making the arrest without warrant.
Precisely what distinguishes felony from misdemeanor has been the subject of discussion even among English writers, and is the subject of no little embarassment under our own legislation. We are of opinion, however, that it is not difficult to determine the principle upon which it was held justifiable to arrest a person accused of one of these classes of offences without waiting to observe the ordinary formalities of process, while it was necessary to wait and to observe these formalities in other cases. Unquestionably the distinction was made, not in view of the infamy or character of the offence, but in view of the punishment to which the accused person would be liable if convicted.
Inasmuch as an accused person must be deemed to be innocent until found guilty, it would be absurd to found summary treatment upon the mere nature of the alleged of-fence ; for this would involve a subtle implication of guilt, an assumption that he deserved no better treatment. The ground was simply that a person accused of an offence to which terrible punishment was attached would, whether innocent or guilty, be likely, almost certain, to fly and avoid arrest, and thus defeat judicial inquiry. The test question is : Why not wait and procure a warrant before you make the arrest ? The answer is, because the punishment for this alleged offence is such that, by that time, the accused will have fled and escaped. There never was any other excuse for omitting the ordinary sanctions and guaranties of regular proceeding.
*544 Now, while this is the ground, and seemed to be conceded at the argument to be the ground, of the rule as to arrests without warrant, it is urged that this rule should be applied according as an offence is defined to be a felony or a misdemeanor at common law, notwithstanding these offences are not distinguished by the punishment in the same manner as at common law. In effect it is argued that an accusation of petty larceny should be treated as an accusation of felony, as if there loomed behind it all the terms of the common-law punishment of felony, notwithstanding that any person convicted of that offence may be punished by a.mere fine, or by imprisonment in the jail of the District for a period not exceeding six months, or by both, at the discretion of the court. When the reasons for swiftness, Avhich once accompanied an accusation of the so-called felony, have been removed by the legislature, when the conclusive probability of flight during the short delay for procuring a warrant upon the sanction of a sworn charge no longer exists, it would seem that the old distinction of common-law felony and common-law misdemeanor had ceased to be a sensible rule for determining whether an arrest should be summary or solemn.
Without any other authority than the reason of the common-law rule itself, we should refuse to employ the mere formula of that rule, since it could not serve here its original purpose. On the very principle of that rule we should now classify accusations which do and accusations-which do not justify arrest without warrant, according to the punishments which await conviction, and not according to the descriptions by which crimes were Isnown to the common law. But we are not without other authority for placing the rule of arrest on this ground.
The Fifth Amendment of the Constitution declares that “ No person shall he held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury.” What crimes are to be classified as-capital or infamous in the sense of this clause has been considered by the Supreme Court of the United States in *545 the two recent cases of Ex parte Wilson, 114 U. S., 417, and Mackin vs. U. S., 117 U. S., 348. And those decisions are to the effect that they do not constitute a first class of crimes ; that is to say, crimes known as capital or infamous hy the common-law at the time of the adoption of the Constitution, but such crimes as Congress, when it should come to establish crimes against the United States, should make capital or infamous by the punishments attached to them. Now we have here, in the Constitution itself, a regulation of one branch of the very subject we are considering; namely, the treatment to which a person accused of crime shall be entitled; and the principle declared is that, in reference to the most important aspect of that question, crimes shall be classified not according to any common-law distinction, but according to the punishments which our own legislature may from time to time attach to the m. In applying this distinction the Supreme Court held that imprisonment in a penitentiary, with or without hard labor, is an infamous punishment. Mackin vs. U. S., 117 U. S., 352.
Now it is to be observed that at common law misdemeanors might be prosecuted upon an information filed' at the mere discretion of the proper law officer of the Government ex officio, although they were ordinarily prosecuted upon indictments found by a grand jury; but, under this clause of the Constitution, as construed by the Supreme Court, if a crime, which was a misdemeanor at common law, he punishable by imprisonment’in a penitentiary (as certain offences expressly defined to be misdemeanors are punishable under statutes of the United States), it can be prosecuted only upon a presentment or indictment of a grand jury. It follows equally that if what was a felony at' common law should be made punishable only by fine, this clause would not require that it should be prosecuted upon indictment.
. As to the treatment of accused persons, then, in respect of the manner of prosecution, our fundamental law has put aside the test of misdemeanor and felony, and has established the principle that we are to look only to the punishments provided by our statute. We are of opinion that *546 this principle is of broad application. While different considerations are presented by the matter of arrest and the matter of prosecution, we are of opinion that this provision indicates that crimes against the United States are to classified according to the punishments established by our own legislature, and that we are to be guided by this test wherever it can serve the purpose in hand.
We hold, then, that the circuit court properly refused the instruction asked on the part of the defendant Rhodes, and was right in giving the following instruction as prayed by the plaintiff: “If the jury believe from the evidence that the defendant Rhodes arrested, searched and imprisoned the plaintiff, without any written complaint under oath, and without any warrant therefor, then she is enticled to recover against him in this return.”
And we are of opinion that an officer has no right to arrest without a warrant, after the offence has been committed, in any case where the punishment attached to that offence is only a fine or imprisonment in the jail of. the District, or both.
We have next to consider the other instructions given at the instance of the plaintiff. Only the second, fourth, sixth and ninth of these were objected to at the argument. The second relates to the liability of the defendants Patton and Hunt, and was as follows ;■
“2. If the jury believe from the evidence that the defendant Rhodes arrested the plaintiff without any warrant therefor, at the instance, suggestion or request of the defendants Patton and Hunt, or either of them, or that they or either of them counseled, advised, encouraged, consented to or aided and abetted in having said arrest made, then the plaintiff is entitled to recover against the defendant or defendants so participating therein as aforesaid.”
The law on this subject was very carefully stated by Mr. Justice Baldwin, in charging the jury in Johnson vs. Tompkins, Baldw. C. C., 600, 601, and this more compact statement is in conformity with that demonstration. It was plainly intelligible to the jury that the consenting *547 mentioned in this instruction was something very different from mere submission to another person’s decision, or from subsequent approval of an act done. The context indicated to them that co-operative consent was meant.
The fourth instruction was as follows :
“4. The defendant Rhodes being only a police officer, and neither a judicial officer nor an attorney at law, advice and counsel obtained from him, by the defendants Patton and Hunt, would be no justification, if they either suggested or originated the proceedings against the plaintiff, or, after they were commenced, took part therein by encouragement or approval, or consenting thereto, either by words or acts. And the jury should, in determining the relations of the defendants Patton and Hunt to the acts immediately performed by Rhodes, consider all the facts and circumstances disclosed by all the evidence.”
■ The law does not recognize legal advice given by one not supposed to be learned in the law, as a justification of conduct founded on such advice ; and a mere ministerial officer is not recognized as a person thus learned. The concluding part of this instruction authorizes the jury, in determining the relations of the defendants Patton and Hunt to the acts immediately performed by Rhodes, to consider, among other things, the fact that one was the president and the other was the matron of the institution in which the plaintiff was a pupil:; that they were thereby charged with certain duties of care and protection, as well as of inquiry and discipline, in relation to that pupil, at the time when they called in the police officer; and that all of these facts might be considered and weighed in determining whether the authorities of the university aided or consented to a substitution of the proceedings of the officer for the discipline of the university authorities. We are of opinion that such consideration was relevant to the inquiry and appropriate to the particular situation. The jury might well regard the conduct of these university authorities as a surrender of dominion which placed them in a privity with the acts of the officer to whom they surrendered.
*548 The ninth instruction seems to relate to the question of damages. It was as follows:
“9. If the jury shall find from the evidence that there were no circumstances connected with the alleged loss of money out of which the arrest arose which would have induced a reasonable, dispassionate person in the position of the defendants, and with the knowledge then possessed by them, to suspect the plaintiff to have been guilty of the charge made against her, and to induce such a person to have undertaken such a prosecution from public motives, then there was no probable cause for the arrest, and the jury may infer, in the absence of proof to the contrary, that such arrest and imprisonment were not made from public motives ; and in considering this question it will be proper for the jury to take into consideration the evidence tending to show the plaintiff's previous good character.”
It is unnecessary to say more than that we find no error in this instruction.
The verdict entered of record was against all of the defendants in the ordinary form; but it was urged, on the motion for a new trial, that, as actually returned by the jury, it contained also the additional words “to be assessed equally against each of the defendants.”
Whether these additional words were a part of the verdict as originally returned to the court does not appear in the record. But if the question had been brought before us, we should hold that the court was right in ordering the verdict to be recorded without the superfluous and illegal addition.
Judgment is affirmed.