## UNITED STATES *v.* SMITH.

*(Circuit Court, E. D. Virginia. December 23, 1889.)*

1. INFORMATION—INFAMOUS OFFENSES.
    Any offense involving imprisonment in a general state-prison or penitentiary is infamous, and cannot be prosecuted by information, under the first clause of the fifth amendment Const. U. S., which declares that "no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury."

2. SAME—RIGHT TO FILE INFORMATION.
    The right to file an information is not a prerogative of the prosecutor's office. The district attorney must first have leave of court; and the court may require him, before granting leave, to bring the accused before the court to show cause, if cause there be, against the filing of the information.

On Motion for Leave to File Information for Violation of Rev. St. U. S. § 5506.

*T. R. Borland,* U. S. Dist. Atty., and *L. C. Bristow,* Asst. U. S. Dist. Atty.

*C. V. Meredith, James Lyons,* and *Meade Haskins,* for defendant.

HUGHES, J. The information which the United States attorney moves for leave to file informs the court and charges that the accused did, at the election held for a representative in congress in Richmond on the 6th

day of November, 1888, unlawfully hinder, delay, prevent, and obstruct certain citizens named from voting in the said election. The information is founded on section 5506 of the United States Revised Statutes, which denounces as the punishment of the offense charged a fine of not less than $500, or imprisonment for not less than one month nor more than one year, or both fine and imprisonment. A preliminary question raised in the argument was whether the district attorney may of right, by virtue of his official prerogative, file informations charging citizens with offenses brought officially to his knowledge. This cannot be done, under the rules and practice of this court, except upon previous complaint under oath, after opportunity has been given the accused to appear before the examining officer, and to confront the witnesses testifying in support of the complaint. This requisite makes it necessary that the district attorney shall have leave from the court to file an information; and, if it is within the discretion of the court whether to grant the leave or not, then the right to file is not a prerogative of the prosecutor's office, and the court may require him, before granting leave, to bring the accused, by rule or other proceeding, before the court, to show cause, if cause there be, against the filing of the information. *A fortiori* is this the case where the objection is not merely to the propriety or expediency of that method of proceeding in this particular case, but is to the jurisdiction of the court to entertain the information at all; which latter is the objection made in the case at bar. The grand jury represents the public conscience. If an act is committed offensive to the public peace, morals, interests, or policy, and is made criminal by law, the grand jury is the institution ordained in the English and American jurisprudence which is empowered to take the act under cognizance, and determine whether or not the offender shall be prosecuted criminally. It is for the grand jury to declare whether the offense is so grave as to form a case for prosecution or so trivial as to be ignored. If offenses are committed which are only private or personal in their character and bearing, they may be prosecuted by information. This is the original and general distinction between offenses properly cognizable by a grand jury and those which may be proceeded against directly by government, in the person of its public prosecutor. It is true that in practice the distinction was not long observed. The domain of the indictment was habitually invaded. Government frequently indulged in arbitrary prosecutions, instituted on the individual motion of the public prosecutor. The practice grew into an abuse, and the framers of the constitution of the United States, sensitively tenacious of the liberty of the citizen, introduced a provision into the organic law intended as a protection from arbitrary prosecutions. The first clause of the fifth amendment of that instrument declares that "no person shall be held to answer for a capital or otherwise infamous crime unless on presentment or indictment of a grand jury;" that is to say, that no person shall be triable for an infamous offense except on an indictment. In subordination to this provision of the constitution, all penal acts of congress must be construed by the courts. Indeed, they are all enacted in contemplation of this provision. An act of congress which admirably

well illustrates the distinction between offenses triable on indictment and those triable on information is that which confers jurisdiction on the police court of the District of Columbia. This act grants to that court "original and exclusive jurisdiction of all the offenses against the United States committed in the District not deemed capital or otherwise infamous crimes; that is to say, of all simple assaults and batteries, and all other misdemeanors not punishable in the penitentiary." This act has been cited by the supreme court of the United States as a correct exposition of the distinction between offenses that must be prosecuted by indictment in the courts of general jurisdiction and those which may be prosecuted by information or other summary proceeding in courts of limited jurisdiction. See the case of *Mackin* v. *U. S.*, 117 U. S. 354, 6 Sup. Ct. Rep. 777. Many cases came before the circuit courts of the United States involving the distinction between crimes triable by indictment and those by information, before the supreme court was called upon to define that distinction. In these cases we held, looking to the word crime in the constitution, that it was the character of the crime that constituted the distinction, and not the punishment denounced by acts of congress. The circuit courts had held, as I did in *U. S.* v. *Baugh*, cited below, that if the offense charged is not treason, and is not declared by act of congress to be a felony, and is not of that class of misdemeanors which fall within the designation of *crimen falsi*, rendering the person convicted incompetent to testify in a court of justice, the prosecution might be by information. But when the question came before the supreme court for the first time, in 1884, and in two subsequent cases, they reversed the judges of the circuit courts, and required us to look not to the "crime," as we had thought the constitution required us to do, but to the punishment denounced by congress against acts made criminal by statute. In *Ex parte Wilson*, 5 Sup. Ct. Rep. 939, the supreme court said, in positive language, as follows:

"Within the last fifteen years, prosecutions by information have greatly increased, and the general current of opinion in the circuit and district courts has been towards sustaining them for any crime, a conviction of which would not at common law have disqualified the convict to be a witness. *U. S.* v. *Shepard*, 1 Abb. (U. S.) 431; *U. S.* v. *Maxwell*, 3 Dill. 275; *U. S.* v. *Block*, 4 Sawy. 215; *U. S.* v. *Miller*, 3 Hughes, (U. S.) 553; *U. S.* v. *Baugh*, 4 Hughes, (U. S.) 501, 1 Fed. Rep. 784; *U. S.* v. *Yates*, 6 Fed. Rep. 861; *U. S.* v. *Field*, 21 Blatchf. 330, 16 Fed. Rep. 778; *In re Wilson*, 18 Fed. Rep. 33. But, for the reasons above stated, having regard to the object and the terms of the first provision of the fifth amendment, [of the national constitution,] as well as to the history of its proposal and adoption, and to the early understanding and practice under it, this court is of opinion that the competency of the defendant, if convicted, to be a witness in another case is not the true test; and that no person can be held to answer, without presentment or indictment by a grand jury, for any crime for which an infamous punishment may be imposed by the court. The question is whether the crime is one for which the statutes authorize the court to award an infamous punishment, not whether the punishment ultimately awarded is an infamous one. When the accused is in danger of being subjected to an infamous punishment, if convicted, he has the right to insist that he shall not be put upon his trial, except on the accusation of a grand jury."

In another case, the supreme court reiterated that "the test is whether the crime is one for which the statutes authorize the court to award an infamous punishment, not whether the punishment ultimately awarded is an infamous one.   When the accused is in danger of being subjected to an infamous punishment if convicted, he has the right to insist that he shall not be put upon his trial except on the accusation of a grand jury," (*Mackin* v. *U. S.*, 6 Sup. Ct. Rep. 778,)—ruling that the punishment, not the crime, shall be considered, and that the punishment, if infamous, makes an indictment necessary.   The court being necessarily called upon to indicate the criterion of infamy, held, further, that public opinion, and not legal and technical definitions, must determine what punishments are infamous and what not so; adding that "what punishments shall be considered as infamous may be affected by the changes of public opinion from one age to another."   Still, there is nothing in the abstract utterances of the supreme court which determines what punishments do work infamy and what do not.   That court assumes that the circuit courts had held that those crimes which disqualify the accused to testify were the only crimes which fell within the category of "infamous."   This is not strictly so, for all these courts had held that in addition to the *crimen falsi* those crimes of every grade which the statutes declared to be felonies were infamous, and should be prosecuted on indictments.   Overruling us generally in our practice of looking to crimes, and requiring us to look to punishments, in determining which were infamous and which not, the supreme court has not given us any abstract rule to guide us in distinguishing infamous from non-infamous punishments, except to declare that unstable public opinion is to govern, and not the definitions of text-books, or the precedents registered by the law reporters, except those of the supreme court itself.   So far, therefore, as the circuit courts are concerned, this important question has passed beyond the pale of original reasoning; and we are under the necessity of looking solely for our guidance to public opinion, as interpreted to us by the highest authority known to our law, the authority of the supreme court itself, manifested by its decisions in such cases as have been taken before it.   Three cases of the sort have been cited in argument at the bar, and I know of no others yet reported, viz., those of *Ex parte Wilson*, 114 U. S. 417, 5 Sup. Ct. Rep. 935; *Mackin* v. *U. S.*, 117 U. S. 348, 6 Sup. Ct. Rep. 777; and *U. S.* v. *De Walt*, 128 U. S. 393, 9 Sup. Ct. Rep. 111.   In *Ex parte Wilson*, the trial had been had in Arkansas, on an information founded upon section 5430 of the Revised Statutes of the United States, which denounces as the penalty for the offense created, a fine of not more than $5,000, or imprisonment at hard labor for not more than 15 years, or both; and the accused had been sentenced to pay the maximum fine, and to suffer the maximum term of imprisonment.   In the *Case of Mackin*, a conviction had been had in a prosecution by information, under section 5440 of the Revised Statutes, which makes the penalty of the offense charged a fine of not less than $1,000 nor more than $10,000, and imprisonment not more than two years.   The sentence of the court was for a fine of $5,000, and for the maximum

term of two years' imprisonment. In the *De Walt Case* the prosecution had been by information based upon section 5209 of the Revised Statutes, which makes the penalty for its violation imprisonment for not less than 5 nor more than 10 years in a state jail or penitentiary. The sentence was for the maximum period of 10 years, by one of the territorial courts of Wyoming. In all these cases the offenses were obviously not properly triable on informations. The sentences were severe and extreme, and in every case the accused were subjected to confinement at hard labor in a penitentiary. The cases were unusual, and out of harmony with the general practice of the courts of the United States in all other districts. We have not allowed trials to be had on informations in cases involving punishment at hard labor in general penitentiaries. Be that as it may, the question now is, what is the rule to be derived from the three decisions of the supreme court under consideration? Of course, that court declared the proceeding in each case to have been unconstitutional, and discharged the prisoners from the sentences which they were undergoing. The general principle was thereby established that there could be no trial on information for an offense punishable at hard labor. That was the express ruling in *Ex parte Wilson*. But the court went further in the two later cases. In that of *Mackin*, it said:

"How far a convict sentenced by a court of the United States to imprisonment in a state-prison or penitentiary, and not in terms sentenced to hard labor, can be put to work, either as part of his punishment or as part of the discipline and treatment of the prison, was much discussed at the bar; but we have not found it necessary to dwell upon it, because we cannot doubt that at the present day imprisonment in a state-prison or penitentiary, with or without hard labor, is an infamous punishment. It is not only so considered in the general opinion of the people, but it has been recognized as such in the legislation of the states and territories as well as of congress."

And in the *De Walt Case* it held briefly, repeating its language in the *Mackin Case*, that "at the present day imprisonment in a state-prison or penitentiary, with or without hard labor, is an infamous punishment," and could not be inflicted in a prosecution by information. These three decisions of the supreme court furnish our only guide in dealing with the question at bar. If we regard the facts of the cases reviewed, the deduction from them is that hard labor is the ingredient of the imprisonment that rendered the punishment infamous. But if we regard the language of the court hard labor is not a necessary incident, and mere imprisonment in a state-prison or penitentiary renders the punishment infamous.

One question, however, is still left open by the supreme court: What did it mean by the term "state-prison?" It is used in juxtaposition and as synonymous with "penitentiary," the meaning of which is definitely established. All understand a penitentiary to be a prison for the compulsory confinement, generally at compulsory labor, of convicts from the criminal courts. In Pennsylvania and the southern states these prisons are called "penitentiaries." But in nearly all the northern states the term "state-prison" is used synonymously with the word "penitentiary." That designation of such a prison is part of the local vernacular,

particularly in Massachusetts, the state from which Mr. Justice GRAY was appointed, who delivered the opinions of the supreme court in the *Wilson* and *Mackin Cases.* I do not agree with counsel, who resist the filing of this information, that the term "state-prison" was used by the supreme court in the general sense of any jail or lock-up of a county or city owned by the state. Such a construction would lead us to the absurd conclusion that the supreme court meant to hold that no offense involving confinement, however brief, in a state or a city jail or station-house could be prosecuted by information. The supreme court's citation of the act of congress relating to the police court of the District of Columbia negatives such a supposition; that act expressly permitting summary prosecutions for misdemeanors "not punishable by imprisonment in the penitentiary." So far as the infamy of a punishment results from imprisonment, the decisions of the supreme court settle that imprisonment in a general state-prison or penitentiary inflicts infamy, and that no offense involving such imprisonment can be prosecuted by information. They further decide that if the statute which prescribes the punishment of an offense allows a maximum imprisonment long enough to authorize the convict to be taken to a penitentiary there cannot be a prosecution by information, however short a term of imprisonment may actually be inflicted by the court. I think these rulings settle the case at bar. The statute (section 5506) authorizes an imprisonment for 12 months. Convicts of this district are sent to penitentiaries outside of Virginia, under the authority of section 5546 of the Revised Statutes, which does not, like section 5541, limit the class of persons sent, to those who are sentenced for "longer than one year." The practice of the court when sentencing for as long a term as one year is to order the confinement to be in a penitentiary. Section 5506 and this practice of the court clearly bring the case at bar within the purview of the *Cases of Wilson, Mackin,* and *De Walt.* It is incumbent upon me, therefore, to deny the motion of the district attorney for leave to file the information under consideration.