## Ex parte VAN VRANKEN.

### (Circuit Court, E. D. Virginia. October 20, 1891.)

1. ARMY AND NAVY—PAYMASTER'S CLERK—COURTS-MARTIAL.
    The clerk of a paymaster in the navy, appointed by him from civil life and doing duty on land in time of peace, is not a member of the naval establishment, so as to be subject to trial by court-martial for peculation in office.

2. SAME—COURTS-MARTIAL—SENTENCE.
    Article 7, § 1624, Rev. St. U. S., which authorizes sentence of confinement at hard labor in a public penitentiary by a naval court-martial "in any case where it is authorized to adjudge the punishment of death," is the only statute now in force authorizing sentences to hard labor in a public penitentiary by a naval court-martial; therefore, such punishment cannot be inflicted except in the cases punishable with death enumerated in the 20 clauses of article 4 of said section 1624. *Expressio unius exclusio alterius.*

Petition for Writ of *Habeas Corpus* to release a naval paymaster's clerk from imprisonment by virtue of the sentence of a court-martial.

*James E. Heath,* for petitioner.

*Thos. R. Borland,* U. S. Dist. Atty.

HUGHES, J. It appears from the evidence before the court that James Van Vranken, late clerk to Edward Bellows, a paymaster in the navy of the United States, who had been on duty in the navy-yard at Gosport, was arraigned and tried before a court-martial of the navy on charges, under section 1624, Rev. St. U. S. art. 4, cl. 8, of having illegally misappropriated, disposed of, and applied to his own use certain property of the United States in the Gosport navy-yard; that the trial was concluded on the 17th August last; that the court-martial on that day passed sentence on the accused, and transmitted the sentence and the record of proceedings to the secretary of the navy for his approval; that the sentence of the court-martial was, that the accused should be confined and imprisoned for one year in such penitentiary as the secretary of the navy might designate, and to lose all pay that may become due him except $2 a month for necessary prison expenses, and $50 to be paid him at the expiration of his confinement, and then to be dishonorably discharged from the service of the United States, which loss of pay the accused alleges, in his petition, to be in the aggregate $1,223.60; that the accused is now and has been since such sentence, now more than two months, confined in the ship Franklin, in the navy-yard aforesaid, under the custody of its commanding officer, awaiting removal to such penitentiary as the secretary of the navy may designate, who has not yet passed upon the sentence of the court-martial. On the prayer of the accused for an award of the writ of *habeas corpus,* the process has

been issued and served on the commandant of the ship Franklin, who has made due return showing the grounds of detention to be as indicated in the foregoing recital.

If it were conceded that a civilian, acting as clerk of a paymaster of the navy on shore in time of peace, were a military person amenable to trial by court-martial for an offense not capital, the question in this case would be whether it were competent for a court-martial to pass sentence of confinement in a public penitentiary for the offense with which Van Vranken is charged. No authority is given by any statute of the United States to a court-martial of the navy to pass sentence of confinement in a penitentiary, except for crimes punishable with death. As the crime charged against the accused is not capital,—is, in fact, hardly above the grade of petty larceny at common law,—and the court-martial did pass sentence as if the offense had been capital, that is to say, did sentence to confinement in a penitentiary, the action was plainly without authority of law, and null and void.[1]

But the objection to the proceedings under which Van Vranken is confined is weightier than the one thus presented. It is a fundamental principle in this country, it is an article of the national constitution, that no person shall be deprived of life, liberty, or property without due process of law; as part of which process it is declared that no person shall be held to answer for an infamous crime except upon indictment of a grand jury; and the supreme court of the United States has decided, in *Ex parte Wilson*, 114 U. S. 417, 5 Sup. Ct. Rep. 935; *Mackin* v. *U. S.*, 117 U. S. 348, 6 Sup. Ct. Rep. 777; and *U. S.* v. *De Walt*, 128 U. S. 393, 9 Sup. Ct. Rep. 111,—that offenses involving punishment in public penitentiaries or general state-prisons are to be regarded as within the class of infamous offenses. Another and more important ingredient of "due process of law" is that every person accused of crime is entitled to a trial of the issue

---

[1] NOTE BY JUDGE HUGHES. It is erroneously claimed that this is contrary to the ruling of the supreme court in Dynes v. Hoover. 20 How. 81, 84. In that case an enlisted soldier had been tried by court-martial for desertion, found guilty by "partial verdict" of an "attempt" to desert, and sentenced to confinement in a penitentiary for six months. The trial was in 1857, under the act for the better government of the navy, of April 23, 1800, (2 St. at Large, c. 33, p. 45 et seq.) Article 16 of that act made desertion to an enemy punishable by death, and article 32 made all offenses not specified in the act, including. of course, an attempt to desert, punishable "according to the laws and customs in such cases at sea." The supreme court held, at page 82, that the offense of attempting to desert was in the same category as offenses punishable with death, resting its decision on the thirty-second article of navy regulations, and saying: "When offenses and crimes are not given in terms or by definition, the want of it may be supplied by a comprehensive enactment, such as the 32d article of the rules of the navy, which means that courts-martial have jurisdiction of such offenses as are not specified, but which have been recognized to be crimes and offenses by the usages in the navies of all nations, and that they shall be punished according to the laws of the sea,"—according to which, attempts to desert were punishable capitally. But that general provision of criminal law for the navy has been long ago removed from the statute book, and in its place has been substituted the twenty-second article for the government of the navy, (section 1624, Rev. St. U. S., p. 281,) taken from the act of July, 1862, (12 St. at Large, p. 603, art. 8,) which declares that all offenses not specified by law "shall be punished as a court-martial may direct." Therefore, I repeat that no authority is given by any statute of the United States to a court-martial to sentence to confinement in a public penitentiary, except for crimes punishable with death.

of guilty or not guilty by a jury of his peers, or of his country, that is to say, by what is known to the law as a petit jury. In all cases, therefore, in which an accused person is sentenced to imprisonment in a public penitentiary without the intervention of a grand jury, and upon any other verdict than that of a jury of 12 of his peers, the proceeding is in violation of constitutional law, null and void, and may be so pronounced by a court of competent jurisdiction. This right of trial upon indictment and by a jury of one's countrymen is regarded as the chief bulwark of civil liberty, without which all the rights of citizenship would be in continual peril; and the more humble the citizen, the more imperative the law in demanding these guaranties against oppression.

It is true that there are exceptions to rules of procedure even as sacred as those just described as essential to the freedom and safety of the citizen. Persons who belong to the army and the navy, in which summary trial under martial law is necessary to discipline and to the efficiency of those organizations, are not entitled to the legal privileges which have been mentioned as belonging to every citizen. The officer or soldier or sailor of the army or navy voluntarily surrenders the rights of the citizen in this respect when he enters or enlists in those services; and he therefore cannot complain of the method of trial, or the sentences, of military courts, so long as they conform to military usage and to the laws of the land relating to the army and navy. The question, therefore, in the case of Van Vranken is, does he belong to the navy? Is he a member of the naval establishment of the United States? Does he belong to the military or civil establishment of the country? Obviously, it is not every one who has employment in immediate connection with the navy that belongs to the military establishment of the navy. The workmen and artisans employed in building and repairing naval vessels are mere civilians, and are in no sense a part of the military organization of the navy. The same is the case with clerks who keep books and accounts and perform clerical service for officers of the navy while on land. I believe it has been held by some of the courts, and held very properly, that clerks of naval officers on duty on ship-board on a voyage belong to the military establishment, and are amenable to martial law; but this is because of the necessity of absolute discipline on a ship at sea, where there cannot, in the nature of the case, be one law for one class of those on board, and another law for another class. The courts have recognized the distinction between the case of persons performing clerical duty on ship-board, and that of persons performing such duties on land in time of peace. That clerks of naval officers doing duty on land in time of peace, appointed from civil life for periods terminable at the will of such officers, and liable to return to civil life whenever such employment ceases, are civilians, and not members of the military establishment of the navy, seems to me to be too clear to admit of doubt. In respect to clerks of paymasters, such as Van Vranken is, the regulations of the navy, published in 1878, say expressly, in article 81, on page 125, that "no clerk employed by a pay officer on shore can be considered as attached to the navy, or subject to the articles of war;" and

no revocation of this article has ever been announced. There can be no sufficient reason assigned for subjecting this class of persons to military trial for civil offenses. Even in the case of an assistant paymaster, who had been tried for civil offenses and condemned by court-martial, Secretary Robeson said, in 1871, in general order No. 162, in disapproving of the sentence: "In cases of serious question, for offenses not against discipline or mere military law, and where there is concurrent civil jurisdiction, I am unwilling to exercise the discretion imposed upon me for the execution of such a sentence, the legality of which is doubtful when enforced by military authority for offenses which may be pursued and properly punished by the criminal courts of the country." In this case the secretary, although authorized by law to deal with the case of a person clearly amenable to court-martial, declined to approve a military sentence as against public policy and the spirit of our laws on this subject. For a much stronger reason should the military trial be avoided in the case of a person declared to be a civilian. In a case submitted to the attorney general of the United States in 1878, for his opinion, (16 Op. Atty. Gen. 13,) that officer held that a quartermaster's clerk (*i. e.*, a civilian employed in that capacity) is not amenable to court-martial jurisdiction, because such a person does not belong to the military establishment. In another case (16 Op. Atty. Gen. 48) the same officer gave a like opinion in the case of another civilian clerk of a quartermaster of the army.

The clerk of a pay officer of the navy on duty on land in time of peace is not a member of the military organization of that branch of the service, and therefore is not amenable to trial and punishment by court-martial; and, being a civilian, he is entitled to the protection of those provisions of criminal law which forbid trials without indictment, and by any other tribunal than a jury of the country.

The only embarrassment I feel in this case arises from the fact that the finding of the court-martial is still pending before the secretary of the navy, awaiting his approval or disapproval. I am bound to believe that the secretary would disapprove that finding, and would release the petitioner, and, if this court were at liberty to postpone its action until after that event, it would much prefer to do so; but its plain duty is to release, and an order will be made to that effect.