09-0321-pr
Matthews v. U.S.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————

August Term, 2010

(Argued: July 9, 2010                                        Decided: October 6, 2010)

Docket No(s). 09-0321-pr

———————

CURTIS MATTHEWS,

*Petitioner-Appellant,*

— v.—

UNITED STATES OF AMERICA,

*Respondent- Appellee.*

———————

B e f o r e:

RAGGI AND LYNCH, *Circuit Judges*, GARAUFIS, *District Judge.*[*]

_____

Petitioner-Appellant Curtis Matthews pleaded guilty to an information charging him with racketeering, drug-related murder, and the use of a firearm.  Matthews contends that he was unconstitutionally charged by information with a crime that could expose him

_____

[*] The Honorable Nicholas G. Garaufis, United States District Judge for the Eastern District of New York, sitting by designation.

1

to capital punishment, in violation of his Fifth Amendment right to indictment by a grand jury for a capital offense. While drug-related murder can be punishable by death if certain aggravating circumstances are specified in the charging instrument, no such aggravating factors were specified in the information. Accordingly, Matthews was not charged with a capital offense. His conviction is therefore AFFIRMED.

----

BRENDAN WHITE, White & White, New York, New York, *for Petitioner-Appellant*.

RICHARD M. TUCKER, Assistant United States Attorney (Jo Ann M. Navickas, Assistant United States Attorney, *on the brief*), *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, New York, *for Respondent-Appellee*.

----

**AMENDED OPINION**[**]

GERARD E. LYNCH, *Circuit Judge*:

This case requires us to decide whether the Fifth Amendment guarantees an unwaivable right to indictment by grand jury if the statute under which the defendant is charged authorizes capital punishment under some circumstances. We hold that such an unwaivable right exists only where the charging instrument exposes the defendant to the risk of capital punishment.

**BACKGROUND**

----

[**] After due consideration of Petitioner-Appellant's petition for rehearing, which is denied, we have sua sponte amended our opinion.

In December 2000, a security guard was shot and robbed as he transported deposits from a North Fork Bank ATM. The FBI's investigation of the robbery ultimately led to Curtis Matthews, a member of the so-called "M&P Crew," a criminal group operating in the area of Miller and Pitkin Avenues in Brooklyn, New York. The M&P Crew distributed marijuana, MDMA, cocaine, and crack cocaine, and engaged in armed robbery, kidnaping, arson, and murder. Matthews and other members of the M&P Crew were indicted on charges of bank robbery, conspiracy to commit bank robbery, and using a firearm in furtherance of a claim of violence arising from the North Fork Bank robbery. Matthews was later named in a superseding indictment charging him with a broad range of crimes arising from the activities of the M&P Crew, including racketeering, robbery, conspiracy to distribute several drugs, murder in aid of racketeering, and several firearms counts.

The murder charge stemmed from a drug rivalry. In December 2001, Matthews was shot by a marijuana dealer named Sheldon Joehill, with whom the M&P Crew had been fighting. Joehill fired from a truck he had borrowed from Raymon Bholaisingh. Three months after he was shot, Matthews saw Bholaisingh and Lennox Bradley in the truck and mistakenly concluded that the two had been involved in the shooting. In retaliation, Matthews shot and killed Bradley, and directed another M&P crew member to shoot Bholaisingh.

Matthews's trial was scheduled to begin in June 2006. In late May, however, Matthews entered a plea agreement under which he agreed to waive indictment and plead

3

guilty to a superseding information charging him with one count each of racketeering, 18 U.S.C. § 1962(c), drug-related murder, 21 U.S.C. § 848(e)(1)(A), and the use of a firearm in furtherance of the drug-related murder, 18 U.S.C. § 924(c)(1)(A)(iii). The plea agreement specified that the statutory maximum for both the drug-related murder and the firearm count was life imprisonment. The plea agreement estimated the applicable guidelines sentencing range to be 360 months to life, plus a consecutive 120 months on the firearms charge.

On May 30, 2006, Matthews waived indictment and pleaded guilty to all counts of the superseding information. The district court asked why the government had not obtained a superseding indictment rather than proceeding by information, as a superseding indictment would not have required an allocution waiving the right to a grand jury. The government responded that it was under a time constraint, and the court proceeded with the allocution, ultimately finding that Matthews had knowingly and voluntarily waived his right to indictment by a grand jury. In June 2007, the district court sentenced Matthews to fifty years' imprisonment, consisting of forty years for racketeering and forty years for drug-related murder, to run concurrently, and a consecutive ten years for the firearm charge. Matthews raised no objection, either at plea or sentence, to the absence of a grand jury indictment.

In June 2008, Matthews filed a pro se petition to vacate his sentence under 28 U.S.C. § 2255, arguing first, that he had received ineffective assistance of counsel, and second, that the district court lacked jurisdiction because he was charged by information

4

rather than indictment under a statute, 21 U.S.C. § 848(e)(1)(A), which permits imposition of a death sentence under certain circumstances. The district court denied Matthews's petition. We granted a certificate of appealability, limited to the second issue.

**DISCUSSION**

Matthews argues that because he was charged by information with a crime that could, under some circumstances, be punishable by the death penalty, his Fifth Amendment right to indictment by a grand jury was violated. The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S. Const. amend. V, cl. 1. Thus, in the courts of the United States, a defendant may not be charged with a capital crime, or indeed with any felony, unless the charge is brought by a grand jury. Green v. United States, 356 U.S. 165, 183 (1958) (overruled on other grounds by Bloom v. Illinois, 391 U.S. 194 (1968)); Mackin v. United States, 117 U.S. 348, 350-52 (1886). This right, however, like most other rights of criminal defendants, ordinarily may be waived, if the waiver is knowing and intelligent. See Fed. R. Crim. P. 7(b) (permitting waiver of indictment and prosecution by information for non-capital felonies); see also United States v. Ferguson, 758 F.2d 843, 850-51 (2d Cir. 1985) ("Waiver of indictment is an act clothed in formality. Although no particular catechism is prescribed, the waiver must be made in open court, defendants must be informed of the nature of and the cause for the accusation, and the court must be satisfied that the defendants waive their rights,

5

knowingly, intelligently, and voluntarily."). Such waivers are not unusual, especially in connection with plea agreements.

Matthews contends that his circumstances fall within a limited exception to the waivability of the right to grand jury indictment, carved out by the Supreme Court a half-century ago. In Smith v. United States, 360 U.S. 1 (1959), the Supreme Court reversed the conviction of Johnny Ray Smith, who had waived indictment and pleaded guilty to an information charging him with transporting a kidnaping victim across state lines. The statute under which Smith was charged provided that a person convicted of interstate kidnaping could be punished by death if the victim was harmed, but only by a maximum of life imprisonment if the victim was released unharmed. Id. at 7. The information to which Smith pleaded did not state whether Smith's victim had been released harmed. On appeal, Smith argued that he had been charged with an offense that could be punished by death if the government showed at trial that his victim was harmed. The government argued that the statute created two offenses: kidnaping without harm, punishable by imprisonment, and kidnaping with harm, punishable by death, and that Smiths' victim had not been injured. The Supreme Court agreed with Smith:

> [Transporting a kidnaping victim across state lines] is punishable by death if certain proof is introduced at trial. . . . [W]hen the offense as charged is sufficiently broad to justify a capital verdict, the trial must proceed on that basis, even though the evidence later establishes that such a verdict cannot be sustained because the victim was released unharmed. It is neither procedurally correct nor practical to await the conclusion of the evidence to determine whether the accused is being prosecuted for a capital offense.

6

Id. at 8. The Court concluded that Smith's waiver of indictment was invalid, reversed his conviction, and remanded to the district court with instructions to dismiss the information. Id. at 10.

Matthews contends that Smith controls this case, and renders his waiver of indictment and subsequent conviction invalid, because "the Supreme Court has long held that any such waiver is invalid where the potential punishment is death, even if death is not sought." Brief for Petitioner-Appellant at 11. But this misapprehends Smith. The critical fact in Smith was not that the death penalty was theoretically available, under certain circumstances, under the statute creating the offense with which Smith was charged. Rather, Smith's waiver was invalid because, once the information was filed, Smith could have been executed pursuant to that information, subject only to the government's ability to prove the fact authorizing the death penalty – harm to the victim – at trial.

Since Smith, however, the law governing capital punishment has radically changed. First, in Furman v. Georgia, 408 U.S. 238 (1972), the Supreme Court held that the regime of discretionary capital punishment that applied when Smith was decided was unconstitutional, and in Gregg v. Georgia, 428 U.S. 153 (1976), the court approved modern capital punishment statutes that required findings of particular aggravating circumstances before a jury could impose a death penalty. Second, in Apprendi v. New Jersey, the Supreme Court held that under the Sixth Amendment, any fact other than the fact of a prior conviction that increases a defendant's sentence beyond the statutory

7

maximum must be submitted to the jury and proved beyond a reasonable doubt. 530 U.S. 466, 489 (490) (2000). Two years later, in Ring v. Arizona, the Supreme Court clarified that an aggravating factor necessary under Arizona law to impose the death penalty must, under Apprendi, be found by the jury and not the sentencing judge. 536 U.S. 584, 609 (2002).

Although Apprendi and Ring did not address the Fifth Amendment, we have held that the logic of those cases requires that statutory aggravating factors be alleged in the indictment in capital cases. United States v. Fell, 531 F.3d 197, 237 (2d Cir. 2008); United States v. Quinones, 313 F.3d 49, 53 n.1 (2d Cir. 2002). Moreover, federal sentencing statutes authorize the imposition of capital punishment only when the prosecutor timely files a notice specifying the aggravating factors justifying the death penalty. 18 U.S.C. § 3593(a).

When Smith was charged with kidnaping, before Apprendi, he could have been put to death under the charging instrument to which he pleaded. In the wake of Apprendi, Ring, and Quinones, however, the death penalty may not be imposed unless the charging instrument specifies aggravating circumstances justifying capital punishment. In order for a person to be "held to answer for a capital . . . crime" under the Fifth Amendment, the charging instrument must expose him to capital punishment. The Fifth Amendment, as interpreted in Smith, guarantees an unwaivable right to indictment by grand jury not when the statute creating the offense authorizes capital punishment in some circumstances, but when the charging instrument holds the defendant to answer for a capital crime. A

8

charging instrument that alleges no aggravating elements authorizing capital punishment does not do so.[1]

We thus look to the charging instrument to which Matthews pleaded. Matthews pleaded guilty to an information charging him with drug-related murder in violation of 21 U.S.C. § 848(e)(1)(A). In order for a drug-related murder to be punishable by death, the government must show one or more aggravating factors set forth in 18 U.S.C. § 3592(c). While the earlier superseding indictment of Matthews did set forth such aggravating factors, thus exposing him to the risk of capital punishment, the information to which Matthews ultimately pleaded did not. The information, therefore, did not expose Matthews to capital punishment. Indeed, as the plea agreement makes clear, that was the entire point of the superseding information, and of Matthews's plea: the principal

---

[1] Matthews's assertion that United States v. Payne, 591 F.3d 46 (2d Cir. 2010), compels a different result is similarly without merit. In Payne, this Court concluded that, for the purposes of the indefinite limitations period provided by 18 U.S.C. § 3281, an offense is "punishable by death" when the statute "authorizes death as a punishment," regardless of whether the particular defendant is death eligible. Id. at 59. Payne, however, addressed only the question of "whether an offense is 'punishable by death' *within the meaning of § 3281*." Id. at 58-59 (emphasis added). Therefore, its holding is not controlling in this case, which deals only with the Grand Jury Clause and Federal Rule of Criminal Procedure 7(a)(1). Furthermore, Payne rested, in part, on the practical difficulties with "await[ing] the conclusion of the evidence to determine whether the accused is being prosecuted for a capital offense." Id. at 58, quoting Smith, 360 U.S. at 8. Determining the appropriate limitations period must occur before a valid charging instrument can be created and, therefore, implicates practical considerations as far-reaching as when to cease an investigation, which defendants can be charged, and what crimes can be prosecuted. None of these practical concerns are implicated when determining whether a particular defendant can waive prosecution by indictment, a decision implicating only the plea bargaining process. Therefore, Matthews's reliance on Payne is unpersuasive.

concession offered to Matthews in consideration for his guilty plea was relief from the risk of a death sentence. Since the offense charged in the information did not charge Matthews with a capital crime, or expose him to a risk of execution, he was fully entitled to waive his right to be charged by grand jury indictment. As Matthews does not dispute that his waiver was voluntary, knowing, and intelligent, the waiver was effective, the information was properly filed, and Matthews's plea, conviction, and sentence are valid and binding.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.