**UNITED STATES of America, Appellee,**

v.

**Curtis SMITH, Defendant–Appellant.**

**No. 309, Docket 92–1223.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 21, 1992.

Decided Dec. 11, 1992.

---

Richard A. Reeve, Asst. Federal Public Defender, New Haven, CT, for defendant-appellant.

Joseph Hutchison, Asst. U.S. Atty., D. of Connecticut, New Haven, CT (Albert S. Dabrowski, U.S. Atty., of counsel), for appellee.

Before OAKES, NEWMAN and MAHONEY, Circuit Judges.

OAKES, Circuit Judge:

Curtis Smith appeals from the revocation of his one-year term of supervised release and the imposition of a six-month jail sentence for violations of the conditions of his release. Smith had already served a one-year jail term on the same misdemeanor embezzlement charge, which Magistrate Judge Ronald J. Hedges, of the District Court for the District of New Jersey, imposed together with the supervised release term. During his release, Smith's case was transferred to the District of Connecticut; Chief District Judge Ellen Bree Burns of the District of Connecticut revoked his release on the last day of the one-year term.

Smith challenges the revocation of his supervised release on three grounds. First, he argues that, consistent with the Fifth Amendment and Rule 7(a) of the Federal Rules of Criminal Procedure, he cannot be sentenced to more than one year in jail on the basis of a single charge, since he has not been indicted. Second, he argues that due process required the court to grant him a stay to allow his counsel to prepare for the revocation hearing, and that its failure to do so was not harmless since, if this stay had been granted, the court would have lost jurisdiction over him. Third, he argues that the court sentenced him for violating terms of release which were never, in fact, imposed.

For the reasons discussed below, none of these arguments has merit, so that we affirm. To put our reasoning in context, however, we begin with a brief review of Mr. Smith's sentencing and revocation hearings.

## BACKGROUND

Following Smith's guilty plea on the misdemeanor embezzlement charges, Magistrate Judge Hedges of the District Court for the District of New Jersey sentenced him on May 2, 1989 to the maximum term of one year imprisonment, to be followed by one year of supervised release. One year is the maximum release term for a misdemeanant. 18 U.S.C. § 3583(b)(3) (1988). The sentence was to be served following the completion of a sentence Smith was then serving for another offense. Magistrate Judge Hedges imposed "the standard conditions that have been adopted by this court" as conditions of Mr. Smith's release. These conditions, which were drafted for probation cases and include terms not mandated for supervised releasees, included requirements that Smith commit no crimes while on release, that he report regularly to his probation officer, that he neither possess nor use any illegal drug, that he work regularly, and that he support his dependents. Two of these conditions, that Smith commit no crimes and that he possess no illegal substances, were mandated by § 3583(d) (1988 & Supp. III 1991).

In addition, the court imposed as a special condition a requirement that Smith enter into a restitution agreement within three months of his release with the trucking company whose goods he had embezzled, for $18,200. This sum apparently represented the company's loss, rather than Smith's gain. The embezzlement charges stemmed from Smith's abandonment of a delivery truck containing shrimp, seafood, cheesecakes, and pickle products, which goods were then stolen by others. However, Smith himself had sold twenty boxes of shrimp for $20 each before he abandoned the truck.

Smith completed his one year sentence on April 8, 1991, and began serving his supervised release term. Although the District of New Jersey retained official jurisdiction over him, he was in fact in Connecticut on his release date so as to be under the supervision of the District of Connecticut from the beginning of his release term.

The courts and the probation office evidently bungled the paperwork in this case, forcing the Connecticut court to conduct a rushed revocation hearing at the end of the term because it feared it would lose jurisdiction. The first attempt to transfer formal jurisdiction from New Jersey to Connecticut, in October 1991, was made shortly after Smith began to violate several of the conditions of his release. It was mishandled. A second attempt was not made until February 1992, and was not completed until February 24th. The Connecticut court did not receive Smith's file until March 29, 1992. On April 1, with the paperwork finally complete, the probation office filed a revocation petition. An arrest warrant was issued, and Smith was arrested on Friday, April 3. An attorney was appointed over the weekend, and the revocation hearing held on Monday, April 6, 1992, with Smith's supervised release term, and perhaps the court's jurisdiction to revoke it, set to expire the next day.[1]

After the revocation hearing, Chief Judge Burns concluded that Smith had violated several terms of his supervised release. First, Smith had never entered into a restitution agreement with the trucking firm whose goods he had appropriated. His probation officer raised the issue once; Smith responded "that's what they have insurance companies for. Everybody gets their money." Chief Judge Burns concluded that this statement was evidence of a willful failure to agree to restitution, particularly in light of a considerable history of Smith's ignoring similar orders in other cases.

Second, Smith's urine had tested positive for cocaine in September 1991, indicating that he had used an illegal substance. Chief Judge Burns concluded that he had

---

**1.** At the time, no one was sure whether the release term would expire April 6 or April 7. Smith's counsel indicated that he did not think an additional day would make much difference in his ability to prepare. Consequently, the court elected to hold the hearing the afternoon of the 6th, rather than risk losing jurisdiction by granting a one-day continuance.

violated the condition not to use or possess illegal drugs.

Third, Smith had been convicted of burglary in Connecticut state court in February, apparently after entering an apartment he had shared with a girlfriend and taking some disputed household goods. He had also been arrested on assault charges involving the same woman; the state court issued a temporary restraining order. In addition, he had been arrested in October and November 1991 on charges of theft of a firearm, larceny, issuing bad checks, and failure to appear. Chief Judge Burns concluded that he had violated the condition to commit no crimes while on release.

Fourth, Smith had not met with his probation officer since October 28, 1991, and had never submitted the required monthly written reports. Chief Judge Burns concluded that he had violated these conditions as well. There was also evidence that Smith had failed to pay child support due the state of Connecticut for his children receiving AFDC benefits, although the district court concluded that this violation of his release conditions was not established during the hearing.

At the hearing, Smith's counsel raised several arguments which, he asserted, he could not adequately research in the time allotted: the indictment clause issue raised on this appeal; the jurisdiction of the district court over Smith after April 6; the validity of the state court conviction; and whether a number of the conditions of his release had in fact been imposed. He asked for a continuance, which was denied in light of the court's concern that jurisdiction might be lost by the following day; the court did, however, recess until the afternoon to allow counsel the maximum time available to confer with his client.

Counsel also asserts that he did not receive adequate notice that the afternoon hearing would address all of the asserted violations, rather than just the restitution condition which he conceded had been imposed. The court, however, corrected this misimpression that morning, telling counsel that she would probably allow discussion of the other issues, to the extent that they could be developed without additional time to investigate the facts.

Having concluded that Smith had violated these conditions of his release, Chief Judge Burns revoked his release term and sentenced him to imprisonment for six months. She released him on bond, pending this appeal; a warrant was issued for Smith's arrest in August, after he violated the terms of his release on the bond.

The district court had jurisdiction under 18 U.S.C. § 3583 (1988 & Supp. III 1991) (revocation of supervised release). This court has appellate jurisdiction under 28 U.S.C. § 1291 (1988) and 18 U.S.C. § 3742(a) (1988).

## DISCUSSION

### I

■ Smith argues that the district court had no jurisdiction to impose a jail sentence, since he was never indicted for the misdemeanor which led to his sentence of one year in jail and one year on supervised release. He argues that he will now serve a total of 18 months in jail on a single misdemeanor charge, and insists that the indictment clause of the Fifth Amendment to the United States Constitution[2] and Rule 7(a) of the Federal Rules of Criminal Procedure[3] require an indictment for any sentence of more than one year.

First, Smith has not been sentenced to more than a year's imprisonment for a

2. Which provides, in pertinent part, that:
No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . . .
U.S. Const. amend. V.

3. Which codifies the indictment clause:
Use of Indictment or Information. An offense which may be punished by death shall

be prosecuted by indictment. An offense which may be punished by imprisonment for a term exceeding one year or at hard labor shall be prosecuted by indictment or, if indictment is waived, it may be prosecuted by information. Any other offense may be prosecuted by indictment or by information. An information may be filed without leave of court.
Fed.R.Crim.P. 7(a).

single crime. Rather, he was sentenced to a single year of jail time, to be followed by a separate term of supervised release. Although he has violated the terms of that release and been sentenced to serve an additional six months for violation of the court orders enforcing those conditions, these are separate punishments which do not require indictment under either the Fifth Amendment or Rule 7(a). Two other circuits confronted with this question have reached the same conclusion. *United States v. Purvis*, 940 F.2d 1276, 1280 (9th Cir.1991); *United States v. Celestine*, 905 F.2d 59, 60 (5th Cir.1990). *See also United States v. Jamison*, 934 F.2d 371, 373–75 (D.C.Cir.1991); *United States v. Montenegro–Rojo*, 908 F.2d 425, 431–434 (9th Cir. 1990); *United States v. West*, 898 F.2d 1493, 1504 (11th Cir.1990), *cert. denied,* 498 U.S. 1030, 111 S.Ct. 685, 112 L.Ed.2d 676 (1991) (all holding that the supervised release statute authorizes a separate punishment; indictment clause issue not raised).

Second, neither the Fifth Amendment nor Rule 7(a) of the Federal Rules of Criminal Procedure, which, according to the Advisory Committee on the Rules, "gives effect to" this clause,[4] required an indictment in this case. The Fifth Amendment requires the federal government to proceed by indictment only when charging someone with "a capital, or otherwise infamous crime." U.S. Const. amend. V. A crime is infamous if the accused may be subjected to an infamous punishment upon conviction. *Ex Parte Wilson*, 114 U.S. 417, 422, 5 S.Ct. 935, 937, 29 L.Ed. 89 (1885). Infamous punishments include sentences of imprisonment in a penitentiary, *Mackin v. United States*, 117 U.S. 348, 6 S.Ct. 777, 29 L.Ed. 909 (1886); *Wilson*, 114 U.S. at 428, 5 S.Ct. at 940; and sentences to hard labor; *United States v. Moreland*, 258 U.S. 433, 42 S.Ct. 368, 66 L.Ed. 700 (1922) (six months hard labor for misdemeanor); *Wong Wing v. United States*, 163 U.S. 228, 16 S.Ct. 977, 41 L.Ed. 140 (1896) (one year,

plus deportation); *Wilson*, 114 U.S. at 429, 5 S.Ct. at 941. They do not include ordinary misdemeanor sentences of no more than a year in jail. *Duke v. United States*, 301 U.S. 492, 57 S.Ct. 835, 81 L.Ed. 1243 (1937); *see also Purvis*, 940 F.2d at 1279–80; *Celestine*, 905 F.2d at 60–61.

Smith argues that no sentence of more than one year may be imposed without indictment. He provides no case support for this argument, and criticizes only the more recent cases, which do not address the indictment clause issue in depth. However, the rationale of the early indictment clause cases is not that any imprisonment of more than one year is infamous, but that imprisonment in a penitentiary, rather than in a jail or federal correctional facility, is infamous. *See Moreland*, 258 U.S. at 447–48, 42 S.Ct. at 373; *Mackin*, 117 U.S. at 352, 354, 6 S.Ct. at 779, 780. The Supreme Court of the post-Civil War and pre-Depression eras viewed prisons and penitentiaries as places of punishment, and indeed as the modern substitutes "for all the ignominious punishments formerly in use ...," *Ex parte Wilson*, 114 U.S. at 428–29, 5 S.Ct. at 88, *quoting Jones v. Robbins*, 8 Gray 329, 349 (Mass.1857) (opinion of Chief Justice Shaw, for the court), while viewing correctional facilities open only to minor offenders as centers for rehabilitation. *See, e.g., Moreland* 258 U.S. at 440, 42 S.Ct. at 371.

While Congress rejected this neat distinction between punitive and rehabilitative institutions in its 1984 Sentencing Reforms, *see* H.R.Rep. No. 1030, 98th Cong., 2d Sess. 38, 176 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3221, 3359, it continues to forbid courts from sentencing those subject to no more than a year imprisonment to serve their terms in penitentiaries without their consent, 18 U.S.C. § 4083 (1988). The law was the same before 1984. *See* 18 U.S.C. § 4083, as amended in 1959. Pub.L. 86–256, 73 Stat. 518 (1959).[5] In short, the

---

**4.** Fed.R.Crim.P. 7(a) advisory committee's note (1946).

**5.** In addition, most states reserve their prisons for those convicted of crimes punishable by more than a year in jail, and define misdemean-

ors as those crimes not punishable by more than a year in jail. 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 1.6(a) (2d ed. 1986). This pattern may explain Smith's belief that it is the year term that

distinction between prisons, where only serious offenders may be housed, and jails, where misdemeanants are housed, is, as it has been, the critical one. In effect, the modern day equivalent of the infamy discussed in the Supreme Court's post-Civil-War & pre-Depression era indictment clause cases is being branded a felon.[6]

It is true that Congress cannot simply declare an offense a misdemeanor and subject offenders to infamous punishment without indictment. *Wilson,* 114 U.S. at 426, 5 S.Ct. at 939; *and see Moreland,* 258 U.S. 433, 42 S.Ct. at 368 (misdemeanor, if punishable by sentence to hard labor, must be prosecuted by indictment). However, the infamy of the punishment is essentially a measure of the infamy attached to the offender: by authorizing an infamous punishment, the Congress indicates that it believes the offender deserving of infamy. *See Moreland,* 258 U.S. at 447–48, 42 S.Ct. at 373 (Holmes, J., dissenting) (work camp rehabilitative; sentence does not expose convicted misdemeanant to infamy).

Smith's punishment was not infamous. He was sentenced to serve one year in a federal correctional facility, to be followed by one year of supervised release. Supervised release was designed to have a rehabilitative effect, and, unlike the parole terms which it replaced, to be tailored to particular defendants' needs for supervision. H.R.Rep. No. 1030, *supra,* at 122–25, 1984 U.S.C.C.A.N. at 3305–08. The sentence he will serve for violating the terms of his release will also be served in a correctional facility, rather than in a federal penitentiary. Smith has not been branded a felon, nor has he been treated like one.

Rule 7(a), though it requires indictment for any "offense which may be punished by imprisonment for a term exceeding one year or at hard labor," also does not help Smith. As discussed above, he has never been subjected to a term of imprisonment of more than one year: he was sentenced to a single one-year term, and received additional jail time after violating the terms of a separate supervised release term. Rule 7(a) was drafted with the express intent to codify the Supreme Court indictment clause cases discussed above, *see* Fed. R.Crim.P. 7(a) advisory committee's note (1946), and there is nothing in the legislative history to the Sentencing Reform Act of 1984, which established supervised release terms, to suggest an intent to start requiring indictments in ordinary misdemeanor cases. *See* H.R.Rep. No. 1030, *supra,* 37–190, 1984 U.S.C.C.A.N. at 3220–3373. Rule 7(a) simply means, as it always has, that crimes punishable by a basic imprisonment term of more than one year must be charged by indictment.

Accordingly, there was no need for an indictment in this case.

## II.

■ Smith also contends that the district court's denial of a continuance before holding his revocation hearing denied him both the effective assistance of counsel and the due process required by the Fifth Amendment and Federal Rule of Criminal Procedure 32.1. Because Congress neglected to include a provision granting courts jurisdiction to complete revocation hearings after the end of supervised release terms (there is such a provision extending jurisdiction to revoke probation), it is arguable that the court would have lost jurisdiction over Mr. Smith had it granted the requested continuance. *Compare* 18 U.S.C. § 3583(e)(3) (1988 & Supp. III 1991) (revocation of supervised release) *with* 18 U.S.C. § 3565(c) (1988) (revocation of probation).

Despite the court's expedition of his revocation hearing, Mr. Smith received the effective assistance of counsel and was afforded his constitutional and statutory

---

is sacrosanct, rather than the nature of the punishment.

**6.** *See* 18 U.S.C. § 3559 (1988), classifying offenses not assigned letter grades in the defining section by maximum term of imprisonment authorized in the section. Crimes punishable by imprisonment of one year or less, under this section, are misdemeanors, as they have been since time immemorial. *See* former 18 U.S.C. § 1 (1949) (repealed 1984), based on former 18 U.S.C. § 541 (1940) (originally enacted as Act of March 4, 1909, ch. 321, § 335, 35 Stat. 1152; Act of December 16, 1930, ch. 15, 46 Stat. 1029).

rights to due process. Accordingly, we reject his arguments.[7]

First, we confront Mr. Smith's argument that the Federal Public Defender appointed for him was unable to provide effective assistance without a continuance. It is true that in some instances, the denial of a continuance will provide counsel with so little time to prepare that the defendant is effectively deprived of his right to the effective assistance of counsel. *E.g., Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (appointment on day of trial in highly publicized, racially charged capital case); *but cf. United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (25 days granted inexperienced attorney to prepare for fraud trial which had taken government over four years to construct sufficed); *Chambers v. Maroney*, 399 U.S. 42, 53–54, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 (1970) (new legal aid lawyer who first conferred with defendants on day of trial conducted competent defense).

Unless circumstances are such that "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial," *Cronic*, 466 U.S. at 659–60, 104 S.Ct. at 2047, a result will be overturned only on the basis of evidence that a "breakdown in the adversarial process" resulted. *Id.* at 662, 104 S.Ct. at 2048. According to the *Cronic* Court, "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 659, n. 26, 104 S.Ct. at 2047, n. 26. *See also Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1982).

The circumstances of Smith's hearing, though by no means idyllic, do not warrant a *per se* finding of inability to prepare. Nor was there evidence that the adversarial process broke down, or that specific errors undermined the reliability of the proceedings. The district judge made every effort to accommodate the defendant's request for additional time, cancelling her afternoon session so that Smith and his attorney would have the day to prepare. In addition, Smith's attorney worked on the case over the weekend, although his efforts were hampered somewhat by the unavailability of transcripts from the Connecticut state court system and the New Jersey District Court sentencing hearing. Smith's attorney cross-examined the state's witnesses, presented sophisticated statutory and constitutional arguments on Mr. Smith's behalf, and offered mitigating evidence for all of the violations. Chief Judge Burns, relying on this evidence, refused to impose the one-year jail term urged by the prosecution, despite the fact that she had to depart from the sentencing guidelines to do so. It appears that Smith's counsel, despite the adverse circumstances and despite the overwhelming evidence that his client had repeatedly violated the terms of his release, did all that could have been done. Counsel has not been able to discover better legal or factual arguments between the revocation hearing and this appeal; he did a good job the first time around.

Secondly, the revocation hearing met the procedural requirements of the Fifth Amendment and of Rule 32.1 of the Federal Rules of Criminal Procedure. Rule 32.1, which governs the conduct of hearings to revoke either probation or supervised release, provides greater procedural protections than those the Supreme Court has held essential in revoking probation, *Mor-*

---

7. We agree, however, that a defendant's right to prepare adequately for a revocation hearing should not be compromised by the government's inability to process its papers promptly, and we find the government's handling of this case disturbing. The last of the violations occurred two months before the department sought revocation of Smith's release term, and the government's failure to bring the action earlier appears to have been the result of inattention to deadlines rather than consideration of the need for revocation. If routine, such government misfeasance may at times deprive defendants of the effective assistance of counsel in preparing for revocation hearings, or of their procedural due process rights. It may also undermine the public trust in the fairness of judicial proceedings.

*rissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972), or parole, *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973). These requirements are: the right to receive written notice of the alleged violation; the disclosure of evidence against the defendant; the opportunity to appear and to present evidence; the opportunity to question adverse witnesses; and notice of the right to be represented by counsel. Fed. R.Crim.P. 32.1(a)(2)(A)–(E).

Smith and his counsel had advance written notice of the alleged violation; the evidence against him was disclosed on Monday morning, April 6, 1992; Smith was given an opportunity to appear, to present evidence, and to question adverse witnesses; and he was represented by counsel. In short, the hearing met the requirements of the rule. The time afforded Smith's counsel to prepare, while shorter than normal or desirable, cannot be deemed inadequate, and counsel used the time well.

### III.

█ Finally, Smith argues that one of the conditions of release that he was found to have violated was never imposed: the requirement that he meet regularly with his probation officer. This condition was among the "standard conditions" which Magistrate Judge Hedges imposed by reference to a list prepared for probation purposes.

As Smith notes, the Sentencing Reform Act eliminated standard conditions, replacing them with mandatory and discretionary conditions. Regular meetings with a probation officer are not a mandatory condition of supervised release under 18 U.S.C. § 3583(d) (1988 & Supp. III 1991). However, § 3583(d) indicates that the court may impose additional, discretionary conditions, including those listed in the probation statute at 18 U.S.C. § 3563(b) (1988 & Supp. III 1991).

Smith argues that discretionary conditions may not be imposed without an explicit determination that each condition meets the requirements set forth in 18 U.S.C. § 3583(d). Under the statute, conditions of release must: (1) be reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a) (1988); (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a)(2); and (3), be consistent with any pertinent policy statements issued by the Sentencing Commission. 18 U.S.C. § 3583(d) (1988 & Supp. III 1991).

While a court must conduct the analysis this section requires, it need not analyze the factors on the record for each condition. *See, e.g., United States v. Graves,* 914 F.2d 159, 160 (8th Cir.1990). The challenged condition, like most of the standard conditions imposed, is a basic administrative requirement essential to the functioning of the supervised release system: that the defendant communicate with a supervising officer. While the court did not explain its reasons for requiring this particular condition, it did explain its reasons for imposing the maximum sentence, including the maximum one-year supervised release term. In particular, the magistrate judge stressed his well-founded sense that Smith was not functioning well without supervision. The record indicates that the magistrate judge considered the factors required by statute, although he did not explicitly discuss the connection between these factors and each imposed condition. This is sufficient.

### IV.

For these reasons, we affirm the judgment of the district court.