UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————————

August Term, 2010

(Argued: May 9, 2011                                    Decided: May 20, 2011)

Docket No. 10-1869-cr

————————————

UNITED STATES OF AMERICA,

*Appellee*,

v.

JOSEPH SPENCER,

*Defendant-Appellant*.

————————————

Before:  POOLER, B.D. PARKER, and LOHIER, *Circuit Judges*.

Defendant Joseph Spencer appeals the judgment of the District Court for the Southern District of New York (Holwell, *J.*), revoking supervised release and imposing, inter alia, a term of imprisonment.  Spencer challenges both the district court's jurisdiction to revoke supervised release and the district court's finding that he violated a condition of supervised release by failing to report changes in employment and residence.  We hold that (1) the district court retained jurisdiction to revoke supervised release because the delays in adjudicating the revocation petition were "reasonably necessary" under 18 U.S.C. § 3583(i); and (2) the district court erred by finding that Spencer violated the asserted condition, based on the district court's view of the "purpose" of the condition, rather than the "clear and specific" meaning that a person of ordinary intelligence would attribute to it.  Vacated and remanded.

————————————

Jessica Ortiz, David Raskin (*on the brief*), Assistant United States Attorneys, Of Counsel, *for* Preet Bharara, United States Attorney, Southern District of New York, New York, N.Y., *for Appellee*.

Steven M. Statsinger, Federal Defenders of New York, Inc., Appeals Bureau, New York, N.Y., *for Appellant*.

POOLER, *Circuit Judge*:

The district court sentenced Joseph Spencer to 14 months in prison and 18 months of supervised release for violating two conditions of his previous term of supervised release. Spencer asks that we vacate this sentence, arguing that the district court (1) lacked jurisdiction to revoke his term of supervised release because the delays in adjudicating the supervised release violation petition after his original term expired were not "reasonably necessary" under 18 U.S.C. § 3583(i); and (2) erred by finding that he had violated Condition 6 of his release by not notifying his probation officer about changes in employment and residence. We agree in part. The district court retained jurisdiction to revoke Spencer's term of supervised release, but erred by finding that Spencer had violated Condition 6 of his release. Conditions of release must be provided to a defendant in "a written statement" that "is sufficiently clear and specific to serve as a guide for the defendant's conduct." 18 U.S.C. § 3583(f). When determining whether a defendant has violated a condition of release, a court may not expand the meaning of the condition beyond what a person of ordinary intelligence would understand it to forbid, regardless of the court's view of "the purpose" of the condition. Because the district court's interpretation of Condition 6 omitted a key qualifier in the condition, holding Spencer responsible for conduct not clearly and specifically forbidden by Condition 6, we vacate the judgment and remand for further proceedings.

## I.

In October 2005, Spencer pleaded guilty to bank fraud, after providing a cooperating witness six stolen and counterfeit checks, totaling $180,000. On February 16, 2006, the district court sentenced Spencer to time served (one day) and three years of supervised release. Among the conditions of Spencer's supervised release, the district court required that Spencer (1) "not commit another federal, state or local crime" and (2) "notify the probation officer at least ten days prior to any change in residence or employment." We refer to the latter condition as

-2-

"Condition 6" because it is a "standard" condition recommended in a nonbinding policy statement by the United States Sentencing Commission. *See* U.S.S.G. § 5D1.3(c)(6).

Spencer's period of supervised release began on February 16, 2006 and was scheduled to end on February 16, 2009. About a year before his supervision terminated, on February 11, 2008, the Probation Office petitioned the district court for a warrant for Spencer's arrest. The Probation Office alleged that Spencer had violated two conditions of his release. First, the Probation Office alleged that Spencer engaged in new criminal behavior by forging, endorsing, depositing, and using the proceeds of three checks. Spencer had been arrested for this conduct and at this time was being prosecuted in New York state court. Second, the Probation Office alleged that Spencer had violated Condition 6 of his release by failing to report changes in his residence and employment. In particular, Spencer indicated to his probation officer that he worked at Etronics in May and August 2007, although Etronics's records indicated that Spencer was fired on April 20, 2007. In addition, in January 2008 Spencer stayed at an address different than the one he reported to his probation officer after a dispute with his girlfriend, in whose apartment he previously lived.

On February 14, 2008, the district court ordered that a warrant for Spencer's arrest be issued, and on February 27, 2008, the warrant was executed.

The district court initially set the supervised release revocation hearing for May 21, 2008. However, at that time two cases were pending against Spencer in New York state court based on the criminal conduct alleged by the Probation Office in its revocation petition. The state cases against Spencer were dismissed by August 2008, at which time Spencer and the Government resumed plea negotiations. Even though it initially had scheduled a May 2008 hearing, the district court granted the following adjournments:

To June 3, 2008:    At Government's request (because supervising Probation Officer not available); without objection by Spencer.

| To Aug. 8, 2008: | At Government's request and with Spencer's consent (to allow disposition of state charges, relevant to plea bargaining). |
| To Sept. 3, 2008: | Parties agree to adjourn for plea bargaining. |
| To Oct. 2, 2008: | Parties agree to adjourn for plea bargaining. |
| To Nov. 21, 2008: | Parties agree to adjourn for plea bargaining. |
| To April 1, 2009: | Parties agree to adjourn for plea bargaining. |
| To April 28, 2009: | Parties agree to adjourn for plea bargaining. |

Meanwhile, Spencer's three-year term of supervised release expired on February 16, 2009.

In March 2009, the case was transferred to a new prosecutor. The new prosecutor, in what Spencer asserts was a change in the Government's position, informed Spencer that the Government would pursue violations based on the dismissed state cases and rejected Spencer's offer to admit to a single administrative violation to resolve the case. Defense counsel began preparing for the hearing. On April 21, 2009, a week before the scheduled hearing, the prosecutor phoned Spencer's attorney and asked him to agree to another adjournment. Defense counsel refused, but the prosecutor sent a letter to the district court requesting an adjournment of the April 28, 2009 hearing, while noting that Spencer would not consent to an adjournment. In the letter, the prosecutor sought "a short adjournment in order to obtain documents and the testimony of a witness necessary to prove the violations charged." The prosecutor stated that a witness currently was "out-of-state" and would be "out of the country from April 29, 2009 to May 16, 2009." In addition, the Government for the first time requested permission from the district court to view Spencer's probation report.

On April 22, 2009, Spencer opposed the Government's request for an adjournment, arguing that it was "entirely [the Government's] own fault" that it had not yet obtained the necessary documents because "[i]t could, and should, have subpoenaed them a year ago." Nevertheless, the next day the district court granted the Government's request, adjourning the hearing to May 14, 2009. Thereafter, the district court sua sponte adjourned the hearing to June 3, 2009 to accommodate its trial calendar.

Before the June 3, 2009 hearing, Spencer moved to dismiss the petition for lack of jurisdiction. Spencer argued that the district court's delay in holding the hearing was not "reasonably necessary" to adjudicate the revocation petition, and therefore the district court lacked power under 18 U.S.C. § 3583(i) to adjudicate the petition. On June 3, 2009, the district court held Spencer's revocation hearing. At the hearing, the district court reserved decision and requested the parties to submit post-hearing briefing, which was to be completed, at the parties' joint request, on July 24, 2009.

On December 3, 2009, about four months after receiving the last briefing, the district court denied Spencer's motion to dismiss and granted the Government's motion for revocation. Regarding the jurisdictional issues, the district court found that (1) a valid warrant issued during the term of Spencer's supervised release and (2) the delay between the expiration of Spencer's term of supervised release (February 16, 2009) and the date on which supervised release was revoked (December 3, 2009) was "'reasonably necessary' to adjudicate matters arising during the term of supervised release." Turning to the merits of the motion for revocation, the district court found that during Spencer's term of supervised release, Spencer "forged three checks, endorsed them in his name, deposited them into his bank account, and used the proceeds himself." Such conduct, the district court found, constituted four New York crimes, and thus violated a condition of Spencer's supervised release. Lastly, the district court found that Spencer violated Condition 6 of the terms of his supervised release "by his failure to report a change in address and a change in employment." Accordingly, the district court revoked Spencer's supervised release and directed the parties to submit briefing regarding the appropriate penalty.

On December 23, 2009, Spencer renewed his motion to dismiss, arguing that the four-plus months it took the district court to resolve the revocation motion were not "reasonably necessary" under 18 U.S.C. § 3583(i). On January 27, 2010, the district court, treating the motion as one for reconsideration, denied it.

On March 11, 2010, the district court sentenced Spencer to 14 months in prison and 18 months of supervised release. The district court stated:

> After considering all of the factors under the sentencing statute, I have concluded that 14 months is a just sentence in this case, particularly in light of the fact that defendant was shown extraordinary leniency at the time of his sentencing for his original crime and he abused that leniency by proceeding to commit crimes of the same nature as those that he was originally sentenced for.

The district court stayed the sentence pending appeal. Spencer timely appealed, arguing that the district court (1) lacked jurisdiction to revoke his term of supervised release because the delays in adjudicating the supervised release violation petition after his original term expired were not "reasonably necessary" under 18 U.S.C. § 3583(i); and (2) erred by finding that he had violated Condition 6 of his release.

## II.

### A.

Spencer first challenges the district court's power to revoke Spencer's term of supervised release and impose a term of imprisonment and a further term of supervised release. Congress has provided that such power:

> extends beyond the expiration of the term of supervised release for <u>any period reasonably necessary</u> for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

18 U.S.C. § 3583(i) (emphasis added).

That is, supervised release may be revoked (and imprisonment and supervised release imposed) after the term has expired if (1) a warrant or summons was issued during the term; and (2) the post-expiration period is "reasonably necessary" to adjudicate the revocation petition.

Spencer argues on appeal that the second requirement was not satisfied, given: (a) the district court's adjournment of the revocation hearing from April 28, 2009 to June 3, 2009 to give the Government more time to prepare and to accommodate the district court's trial calendar; and

(b) the district court's delay from July 24, 2009 to December 3, 2009 in deciding the Government's revocation petition and Spencer's motion to dismiss.

**B.**

Historically, "even before any statute expressly authorized the retention of jurisdiction over violation charges beyond expiration of the term of probation or supervised release, courts asserted such jurisdiction." *United States v. Janvier*, 599 F.3d 264, 266 (2d Cir. 2010). Unless courts retained such jurisdiction, many "violations of the conditions of release (which can include serious misconduct) that occur late in the term of supervised release would go unpunished." *Id.* at 265-66. Courts, however, disagreed about what event would trigger an extension of jurisdiction. *See id.* at 266 (citing cases).

"In 1994, Congress acted to make explicit the authority of courts to revoke supervised release after expiration of the release term" and clarified that jurisdiction existed if a warrant or summons had been issued before the expiration of the term of supervised release. *Id.* "[T]he most likely purpose of th[is] amendment" – now codified at 18 U.S.C. § 3583(i) – "was to make absolutely clear Congress' earlier intention that sentencing courts have the authority to hold hearings to revoke or extend supervised release after expiration of the original term if they issue a summons or warrant during the release period." *United States v. Morales*, 45 F.3d 693, 701 (2d Cir. 1995). Section 3583(i)'s proviso that revocation proceedings may extend beyond a defendant's term of supervised release for a "period reasonably necessary" for adjudication, 18 U.S.C. § 3583(i), "should be understood in light of Congress's apparent intent that the district court have the power to revoke supervised release after discovery of facts underlying such a revocation." *United States v. Ramos*, 401 F.3d 111, 116-17 (2d Cir. 2005). Congress, in enacting Section 3583(i), wanted courts to retain the authority to adjudicate revocation petitions after the term of supervision expired, so long as a warrant or summons had been filed during supervision and the court did not wait unreasonably long to adjudicate the petition.

*United States v. Ramos* illustrates how this Court has applied Section 3583(i). In *Ramos*, the defendant (Ramos) was arrested on state charges, which gave rise to the release violation. 401 F.3d at 113. Before Ramos's term of supervised release expired, a federal warrant issued for Ramos's arrest, based on his alleged release violation. *Id.* at 114. Ramos's term of supervised release expired days after the warrant was issued, and he was convicted of the state charges about seven months later. *Id.* After the state conviction, another 10 months elapsed until the federal warrant was executed. *Id.* Lastly, after the federal warrant was executed, 17 months elapsed until the district court revoked Ramos's supervised release and sentenced him to a term of imprisonment. *Id.* at 115.

The *Ramos* Court focused on these three periods of delay to determine whether any of the delays was "reasonably necessary" under Section 3583(i). *Id.* at 117. First, the Court found that the seven-month delay from the end of supervised release to the state conviction was "reasonably necessary" because the state court's determination was "plainly relevant" to whether a supervised release violation occurred, and comity and judicial efficiency weighed in favor of waiting seven months for the state proceeding to conclude. *Id.* at 117-18.

Second, the Court found that the 10-month delay between state conviction and federal warrant execution was reasonably necessary. The Court explained that:

> reasonable necessity remains, we think, a relatively elastic concept. The underlying consideration is the same – reasonableness with respect to the legitimate interests of the defendant and the government.

*Id.* at 118. Because Ramos's "liberty interests were not infringed, nor was he prejudiced in any way, by the ten months between his state conviction and the execution of the federal warrant," the Court could not "discern [any] reason to second-guess the district court's determination that it retained jurisdiction to adjudicate the matter." *Id.*

Third, for "the amount of time it took for the district court to adjudicate the allegations of Ramos's violation of the terms of his supervised release," the *Ramos* Court acknowledged that

such a delay "may indicate that the court was not acting with dispatch." *Id.* However, the Court noted that Ramos was responsible for "a substantial period" of the delay because Ramos had requested a stay of the revocation hearing to brief, and for the district court to decide, whether the district court retained jurisdiction, in light of the two previous delays. *Id.* The Court found that Ramos "was not prejudiced by this delay," and thus there was "no basis" to conclude the delay was "unreasonable." *Id.*

## C.

We review de novo the district court's determination that it had jurisdiction to adjudicate the allegations of Spencer's supervised release violation. *Ramos*, 401 F.3d at 115; *Morales*, 45 F.3d at 696.

Spencer argues that two separate periods of delay were not reasonably necessary under Section 3583(i):

> (1) the district court's adjournment of the revocation hearing from April 28, 2009 to June 3, 2009 to give the Government more time to prepare and to accommodate the district court's trial calendar; and
>
> (2) the district court's delay in time from July 24, 2009 (due date to file post-hearing papers) to December 3, 2009 to decide the revocation petition.

The first delay lasted a little over a month. It came after 11 months of delays, caused by six adjournments with Spencer's consent and one without objection. It is difficult for Spencer to argue, after agreeing to 11 months of delays, that a 36-day delay immediately thereafter was unreasonable. As the *Ramos* Court stated, we must look at "reasonableness with respect to the legitimate interests of the defendant and the government." *Ramos*, 401 F.3d at 118. It was not unreasonable for the Government to request an additional month to prepare when a new attorney took over the case and a key witness would have had difficulty attending the hearing. Spencer has provided no evidence that he was prejudiced from this delay or that the Government's change in attorneys unnecessarily delayed adjudication.

The second delay lasted a little over four months. Unlike *Ramos*, the district court here lacked a state-court conviction on which to base its finding of a release violation. Instead, the district court found, based on the evidence presented to it, that Spencer committed four New York crimes and independently violated Condition 6 of his terms of release. Moreover, the district court also resolved Spencer's motion to dismiss for lack of jurisdiction during the four months after briefing. Under the circumstances, it was reasonable for the district court to take four months to decide the revocation petition. Spencer has not presented any compelling evidence that he was prejudiced or that his liberty interests were infringed by this delay.

In sum, the district court retained jurisdiction to adjudicate the supervised release violation petition.

### III.

### A.

Spencer also challenges the district court's finding that he violated Condition 6 of his supervised release. Spencer does not, however, dispute that he violated a condition of his supervised release by committing four New York crimes during his term of supervised release. Nor does Spencer dispute that those crimes alone justify the district court's revocation of supervised release, as at least one is an offense punishable by imprisonment exceeding one year. U.S.S.G. §§ 7B1.3(a)(1), 7B1.1(a)(2), (b).

Spencer argues that the district court based its sentence, at least in part, on a legally erroneous interpretation of Condition 6, thus requiring this Court to vacate the judgment and remand for further proceedings. Indeed, a violation of a condition of supervised release is relevant to the length of the sentence of imprisonment and must be considered by the sentencing court. Although fewer procedural safeguards attach at sentencing after revocation of supervised release than at initial sentencing, *see, e.g.*, *United States v. Carlton*, 442 F.3d 802, 809 (2d Cir.

2006), "Section 3583(e) requires a judge determining an appropriate sentence for violation of supervised release to 'consider[]' most of the factors listed in section 3553(a)," *United States v. Fleming*, 397 F.3d 95, 97 (2d Cir. 2005). As most relevant here, the district court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3583(e) (incorporating § 3553(a)(1)). Thus, the district court was required to consider the nature and circumstances of Spencer's supervised release violations – including, as found by the district court, a violation of Condition 6 – and Spencer's history and characteristics – including his alleged propensity not to notify his probation officer when required to do so.

Here, the district court stated that it had "consider[ed] all of the factors under the sentencing statute," and we have no evidence to the contrary. Nor is there any indication that although the district court considered the finding that Spencer violated Condition 6, the district court nevertheless declined to base Spencer's sentence on it, even in part. While the district court stated that Spencer's sentence was justified "particularly" by the crimes Spencer committed during supervised release, there is no indication that this was the only reason for the sentence. Therefore, if the district court erred in finding that Spencer violated Condition 6, such error was not harmless. *See, e.g.*, *United States v. Sanchez*, 517 F.3d 651, 665 (2d Cir. 2008) (sentencing error is not harmless when it is not clear that the same sentence would be imposed absent the error).

### B.

This Court reviews a district court's finding of a supervised release violation for abuse of discretion, which requires a showing that a district court's decision was based on legal error or on a clearly erroneous factual finding. *See United States v. Carlton*, 442 F.3d 802, 806-10 (2d Cir. 2006). Spencer challenges only the district court's finding that he violated Condition 6.

-11-

In 18 U.S.C. § 3583, Congress authorized district courts to impose limited terms of supervised release, depending on the crime for which the defendant was convicted. Congress listed certain mandatory conditions for supervised release and authorized district courts to impose other appropriate conditions. However, Congress mandated that:

> Written statement of conditions.--The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

18 U.S.C. § 3583(f).

As Congress required, conditions of supervised release must be "sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required." *Id.* "If a condition, however well-intentioned, is not sufficiently clear, it may not be imposed." *United States v. Reeves*, 591 F.3d 77, 80 (2d Cir. 2010). "Due process requires that [a] condition[] of supervised release be sufficiently clear to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *United States v. Simmons*, 343 F.3d 72, 81 (2d Cir. 2003) (internal quotation marks omitted). A defendant has a "due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in [the defendant] being returned to prison." *Id.* (internal quotation marks omitted).

Here, the district court imposed various conditions, including Condition 6, which required that:

> the defendant shall notify the probation officer at least ten days prior to any change in residence or employment.

Spencer admits that he "did not tell his probation officer that he had been fired from his job in April of 1997" and that "in January of 2008, he temporarily left home after a dispute with

-12-

[h]is girlfriend, again without telling his probation officer."[1]   Based on these admissions, the district court concluded that Spencer violated Condition 6 "by his failure to report a change in address and a change in employment."

**1.**

Condition 6, as written, required Spencer to notify his probation officer of a change in employment "at least ten days prior to" the change.  However, there is no dispute that Spencer did not know "at least ten days prior to" his termination at Etronics that he would have to change employment.  He was fired and immediately unable to work.  Condition 6, by its express terms, does not apply to this situation.

The district court found this interpretation "technical," overly literal, and stated that it "belies common sense."  The district court held that:

> The condition's <u>purpose</u> is to keep a probation officer informed when employment has changed, <u>whether it has changed after ten days' notice or not</u>.

The court found support for this "purpose" in *United States v. Smith*, 982 F.2d 757 (2d Cir. 1992), in which we noted that "most of the standard conditions imposed" require "that the defendant communicate with a supervising officer."  *Id.* at 764.  No doubt this limited rationale applies to Condition 6, but it does not clarify when – and about what – Spencer was required to communicate with his probation officer.  Condition 6, by its terms, applies only if it was possible for Spencer to notify his probation officer of a change in employment "at least ten days prior" to

---

[1] Among the conditions of supervised release imposed by the district court on February 16, 2006, Condition 2 specified that Spencer "shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month."  In addition, Condition 3 specified that Spencer "shall answer truthfully all inquiries by the probation officer."  The Government did not allege in its revocation petition that Spencer violated either condition.

the change.[2]  A releasee cannot be imprisoned for failing to comply with an impossible condition, nor can we pretend that Condition 6 lacks a temporal limitation.  *See United States v. Johnson*, 446 F.3d 272, 281 (2d Cir. 2006) (conditions of supervised release must "provide clear notice of what conduct they prohibit and . . . not demand the impossible").

Nor is the "at least ten days prior" limitation so lacking in any rational purpose that a person of ordinary intelligence would disregard it.  With such a limitation, a releasee would need to alert his probation officer to voluntary, planned changes in employment, thus allowing the probation officer a reasonable time – at least ten days – to determine the suitability of the change in employment and, if necessary, to advise the releasee against the change or attempt to avert it.[3] Although the district court, on reflection, may have believed that Condition 6 should apply regardless of "whether [employment] has changed after ten days' notice or not," the district court pointed to language in Condition 6 that carries a different meaning.  It is the district court's duty to impose only "sufficiently clear and specific" conditions.  18 U.S.C. § 3583(f).  Violation of a condition of supervised release subjects Spencer to imprisonment.  Although the rule of lenity does not apply to Condition 6, which lacks a statutory basis, Congress has required – as has this Court – that district courts make each condition of supervised release "sufficiently clear and specific" so that it can "serve as a guide for the defendant's conduct."  *Id.*; *Reeves*, 591 F.3d at 80.

---

[2] *United States v. Black Bear*, 542 F.3d 249 (8th Cir. 2008), is not to the contrary.  In *Black Bear*, the defendant challenged only the district court's reliance on hearsay and the district court's identification of the defendant "[as], in fact, the Black Bear who was the subject of the supervised release order [and] the Black Bear who committed the alleged violations of the conditions of that supervised release order."  *Id.* at 251, 253.

[3] The Government's interpretation of the "at least ten days prior" limitation in Condition 6 is not to the contrary.  The Government stated at oral argument that Condition 6 allows that "if there is advance notice and a probation officer learns of the change in employment or residence in advance and finds that that change is not suitable for some reason for the supervised releasee, the probation officer can take some action to avert the change before it happens."

We cannot say that a person of ordinary intelligence would ignore the explicit "at least ten days prior" limitation in Condition 6. Nor can we say that such a person would believe that Condition 6 includes periods of notice less than ten days. Further, there is no evidence that Spencer had at least ten days prior notice before he was fired from Etronics. Accordingly, the district court erred by finding that Spencer violated Condition 6. Such error was not harmless, and therefore the district court's sentence must be vacated and the case remanded.

**2.**

Spencer also argues that the district court legally erred by concluding that he violated Condition 6 by not reporting a change in his residence in January 2008. We agree. Because the district court applied an erroneous interpretation of Condition 6 that was not harmless as a matter of law, we vacate the district court's sentence and remand the case for further proceedings. Although the district court's factual findings about Spencer's conduct in January 2008 are insufficient to support a conclusion that Spencer violated Condition 6, we express no opinion on whether the record evidence, which the district court may reevaluate on remand, supports a conclusion that Spencer violated Condition 6.

Spencer reported to his probation officer in monthly supervision reports that he was living in his girlfriend's apartment in Brooklyn, NY. Although the Government argues that Spencer twice changed his residence without notifying his probation officer, the Government charged Spencer with violating Condition 6's change-of-residence requirement only by "fail[ing] to notify the probation officer of a change in residence" that occurred "on or about January 4, 2008." Therefore, we consider only the alleged January 2008 violation.

As relevant here, Condition 6 required that Spencer notify his probation officer (1) "at least ten days prior" to (2) any change in "residence."

-15-

First, the district court did not determine whether Spencer could have notified his probation officer "at least ten days prior" to a change in residence (assuming such change occurred). Spencer argues that his girlfriend "asked him to leave [her apartment]" and he complied. According to Spencer's probation officer, in January 2008 Spencer's girlfriend said that Spencer "was not staying there" because she "could not have him around" and was "not on speaking terms" with him. Condition 6, by its terms, applies only if it was possible for Spencer to notify his probation officer of a change in residence "at least ten days prior" to the change. Because the district court did not make such a finding, it wrongly concluded that Spencer violated Condition 6.

Second, Spencer argues that the district court erred by finding that he changed his "residence" in January 2008. According to Spencer's probation officer, Spencer admitted that in January 2008 "there had been a short period of time that he and [his girlfriend] had a dispute" during which he stayed with his brother. However, Spencer also "advised that he had reconciled with [his girlfriend] and that he was then staying again at [her] address." Spencer argues that his stay at a different address was a temporary stay, not a "change in residence" within the meaning of Condition 6. Specifically, Spencer focuses on the term "residence." In *United States v. Venturella*, we noted that "[f]or the most part, 'residence' and 'domicile' are two perfectly different things." 391 F.3d 120, 125 (2d Cir. 2004). The terms, we explained, have "different common law meanings":

> Domiciliaries are those who have a fixed, permanent and principal home and to which, whenever absent, they always intend to return. At the opposite end of the scale are transients, those persons who are just passing through a locality. In between these notions of permanence and transience are residents. Residency means an established abode, for personal or business reasons, permanent for a time. A resident is so determined from the physical fact of that person's living in a particular place. One may have more than one residence in different parts of this country or the world, but a person may have only one domicile. A person may be a resident of one locality, but be domiciled in another.

-16-

*Id.* (emphases added). As we noted, residence requires "an established abode, . . . permanent for a time," and such interpretation does not "impact [people] who reside [somewhere] on a short and transient basis." *Id.* at 132. Based on this common law definition of residence, Spencer argues that a temporary stay outside one's permanent home is not clearly and specifically included within the meaning of a "change in residence" in Condition 6.

The district court stated that Spencer's interpretation of Condition 6 was "plausible." However, the district court held that because Condition 6 "is designed in part to maintain avenues of communication between a defendant and his probation officer," "any changes in the defendant's residence – even changes only lasting a month – should be reported." Spencer argues that the district court erred because a person of ordinary intelligence would not interpret "residence" to be broader than one's "permanent home." We decline, however, to resolve this dispute. As noted above, the district court's judgment must be vacated and the case remanded for further proceedings based on the district court's interpretation of the "at least ten days prior" limitation in Condition 6. Therefore, we need not decide at this time whether the district court correctly interpreted the term "residence" in Condition 6.

## C.

Although the district court wrongly found that Spencer violated Condition 6, we do not cast doubt on the validity of the condition. Condition 6 is a standard condition recommended in a nonbinding policy statement by the United States Sentencing Commission. *See* U.S.S.G. § 5D1.3(c)(6). Many courts routinely adopt this recommended condition, often without modification. However, if a court desires to reach broader conduct than is specified in the condition, the court must modify the language appropriately.[4] A court may not, after the fact,

---

[4] A possible alternative: "the defendant shall notify the probation officer at least ten days prior to any change in residence or employment, or if such prior notification is not possible, then within five days after such change."

-17-

expand the meaning of a condition of supervised release to forbid conduct that a person of ordinary intelligence would not understand it to forbid.

## IV.

For the foregoing reasons, we **VACATE** the judgment of the district court and **REMAND** the case for further proceedings.