[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 8, 2011
JOHN LEY
CLERK

Nos. 11-10870 & 11-10871
Non-Argument Calendar
_____

D.C. Docket Nos. 2:98-cr-00011-WCO-1
2:09-cr-00041-WCO-SSC-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

BENITO MOJICA-LEGUIZAMO,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(December 8, 2011)

Before EDMONDSON, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Benito Mojica-Leguizamo has filed two appeals, and we have consolidated

them. First, he appeals the district court's revocation of his supervised release for a 1998 drug conviction, arguing that the district court lacked jurisdiction to consider one of the alleged violations and that the government failed to prove he willfully committed the other two. Second, he appeals his 70-month prison sentence and $2,000 fine for his conviction of illegally reentering the United States after he had been deported. He contends that his prison sentence was procedurally unreasonable because the district court improperly calculated his criminal history category and substantively unreasonable because the facts do not justify an above-guidelines sentence. He further argues that the district court erred in imposing the fine because the court did not provide a reasoned basis for the fine's imposition.

I.

In 1998 Mojica-Leguizamo pleaded guilty to one count of conspiracy to possess with intent to distribute methamphetamine. The district court sentenced him to a 78-month prison term, imposed a 5-year term of supervised release, ordered him to pay a $5,000 fine, and ordered that he "be turned over to a duly-authorized immigration official" for removal proceedings after completing the prison term. His supervised release conditions included the following: (1) Mojica-Leguizamo was prohibited from committing "another federal, state or local crime"

2

while on supervised release; (2) he was to report in person to his probation officer within 72 hours of his release from Bureau of Prison custody; (3) he was to pay any unpaid part of his $5,000 fine at a rate of no less than $100 per month; and (4) he was prohibited from reentering the United States without the permission of the United States Attorney General.

On January 16, 2004, the BOP released Mojica-Leguizamo from prison. He then began the supervised release period, which was scheduled to expire on January 16, 2009.[1] See 18 U.S.C. § 3624(e). On the same day he was released from prison, immigration authorities deported him to Mexico. Mojica-Leguizamo did not thereafter contact his probation officer. Nor has he made payments on the $5,000 fine since being released.

On July 26, 2006, Mojica-Leguizamo's probation officer filed a petition for the revocation of his supervised release, and the district court issued a warrant ordering Mojica-Leguizamo to appear before the court and answer the probation officer's allegations that he had willfully failed to pay the $4,444 remaining

---

[1] The parties dispute when Mojica-Leguizamo was released from prison. The presentence investigation report states that he was released in November 2003 and deported on January 16, 2004. Mojica-Leguizamo asserts that he was released on January 16, 2004, and deported that same day. The district court adopted the PSR as its findings, but because both sides agree that his term of supervised release commenced on January 16, 2004, we will assume that he was released from prison on that date. See 18 U.S.C. § 3624(e) ("The term of supervised release commences on the day the person is released from imprisonment . . . ."). In any event whether he was released in November 2003 or on January 16, 2004, does not alter the analysis.

3

balance of his fine and had failed to report to his probation officer in person within 72 hours of his release. The warrant also ordered him to show cause why his supervised release should not be revoked. On March 12, 2009—roughly two months after the scheduled expiration of his supervised release period—Gainesville, Georgia police arrested Mojica-Leguizamo when he attempted to sell methamphetamine to an undercover officer. Based on that arrest, a federal grand jury indicted Mojica-Leguizamo for illegally reentering the United States in violation of 8 U.S.C. §§ 1326(a), (b)(2).

On August 27, 2009, Mojica-Leguizamo's probation officer filed an amended supervised release revocation petition with the district court, and on August 31, 2009, the district court issued a new warrant ordering Mojica-Leguizamo to appear before the court and answer his probation officer's allegations. This time the allegations included not only the two allegations from the initial petition but also that Mojica-Leguizamo had committed criminal conduct—illegal reentry—while on supervised release.

Mojica-Leguizamo pleaded guilty to the illegal reentry charge in the indictment. After enhancements and reductions, his total offense level was 21. Based on his 8 criminal history points—2 of which were added because he committed illegal reentry while on supervised release—his criminal history

4

category was IV. The applicable guidelines range was 57–71 months imprisonment and a $7,500–$75,000 fine.

The presentence investigation report noted the following: (1) since Mojica-Leguizamo's return to the United States in early 2009, he earned between $200–$300 per week working in the air conditioning field; (2) while in Mexico from January 2004–early 2009 he worked "in the fields" and as a taxi driver; (3) from 1993–1997 he worked at local poultry plant; (4) he has no assets; (5) he has a fifth grade education and no vocational education or training; (6) he will live with his family in Mexico after deportation following his release from prison; (7) he would probably be unable to pay a fine within the applicable guidelines range; and (8) he might be able to pay something on a fine on an installment basis while serving in prison.

The district court held Mojica-Leguizamo's supervised release revocation hearing at the same time as the sentence hearing for his conviction for illegal reentry. About the sentence for illegal reentry, Mojica-Leguizamo argued that he should not have been assessed 2 criminal history points for committing illegal reentry while on supervised release, which increased his criminal history category from III to IV, because his supervised release period expired before commission of the offense. About the revocation of his supervised release, Mojica-Leguizamo

argued that the initial petition was invalid because his immediate deportation meant that he could not have willfully failed to report to his probation officer in person. He further argued that the government had not met its burden of proving that he willfully failed to pay the fine and that the amended petition was invalid because the district court signed it after his supervised release term had expired.

The government responded that (1) Mojica-Leguizamo violated his supervised release because he did not report in person to his probation officer within 72 hours of his release; (2) there was sufficient evidence in the PSR—and in the PSR for his 1998 drug trafficking conviction[2]—to support his ability to pay, although the government conceded that it "did not have a lot of evidence to bring before the court concerning the dollar amounts that he may have made during his time that he was in Mexico"; and (3) the 2006 initial warrant had "tolled" his term of supervised release.

The district court concluded that the 2 criminal history points were proper and that it had authority to consider the amended petition because the issuance of the initial warrant had "tolled" Mojica-Leguizamo's term of supervised release.

---

[2] The 1998 PSR noted that (1) the government seized Mojica-Leguizamo's car, his only known asset; (2) as an illegal alien Mojica-Leguizamo would have access only to the low paying jobs offered by the BOP; and (3) Mojica-Leguizamo reported adjusted gross income of $2,877 in 1993 but the IRS had no record of any income for 1992 and 1994–1997.

The court also adopted the PSR as its findings.

The district court sentenced Mojica-Leguizamo to a 70-month prison term and 3 years of supervised release for the illegal reentry conviction. The court also ordered Mojica-Leguizamo to pay a below-guidelines $2,000 fine and, as a condition of his supervised release, to pay any unpaid portion of the fine following his release from prison in minimum $100 per month installments. Mojica-Leguizamo objected to the term of imprisonment as procedurally and substantively unreasonable and to the fine because he lacked an ability to pay. Although not addressing the fine, the court responded that this was a "different case" and even if it had ruled for Mojica-Leguizamo on his 2-point criminal history objection it would "consider and feel that a 70-month sentence is reasonable" because Mojica-Leguizamo was deported after a drug trafficking conviction and then illegally reentered the United States to act as a "drug dealer" instead of making a "legal and legitimate living to support [his] family." The court also revoked Mojica-Leguizamo's supervised release and sentenced him to 4 months custody and 56 months of supervised release, with the custody and supervised release to run concurrently with the illegal reentry sentence.

Mojica-Leguizamo appealed his illegal reentry sentence and his supervised release revocation. The government then asked the district court to certify that it

7

would hold further proceedings to make factual findings about the supervised release revocation. The district court granted this request, and we granted the government's motion to remand.

At the hearing on remand the district court explicitly held that it had revoked Mojica-Leguizamo's supervised release because he had committed all three violations alleged in the amended petition: illegal reentry while on supervised release, willful failure to pay the fine, and failure to report in person to his probation officer within 72 hours of release. The district court did not alter the revocation sentence, and Mojica-Leguizamo timely filed these appeals.

II.

Mojica-Leguizamo argues, and the government concedes, that the district court lacked jurisdiction to revoke his supervised release based on his commission of illegal reentry because his 5-year term of supervised release expired on January 16, 2009—roughly two months before he committed illegal reentry. We agree. See 18 U.S.C. § 3624(e) ("The term of supervised release commences on the day the person is released from imprisonment . . . ."). He also argues, and the government again concedes, that the district court erred in revoking his supervised release because (1) the government did not prove that he willfully failed to pay the fine and (2) reporting to his probation officer in person was impossible because he

8

had been deported immediately after his release from prison. We agree. See

Bearden v. Georgia, 461 U.S. 660, 672–73, 103 S.Ct. 2064, 2073 (1983) (holding

that a court may revoke a defendant's probation for failure to pay a fine only if that

failure to pay was willful); United States v. Spencer, 640 F.3d 513, 521 (2d Cir.

2011) ("A releasee cannot be imprisoned for failing to comply with an impossible

condition . . . .").

III.

Mojica-Leguizamo also appeals the 70-month prison term imposed by the

court after he pleaded guilty to the illegal reentry charge in the indictment. He

contends that his prison term was procedurally unreasonable because the court

erred by adding 2 criminal history points for his commission of the crime of illegal

reentry while on supervised release and contends that his sentence was

substantively unreasonable because the facts do not justify an above-guidelines

sentence.

We review a sentence for reasonableness, applying an abuse of discretion

standard. United States v. Irey, 612 F.3d 1160, 1189–90 (11th Cir. 2010) (en

banc). First, we review to ensure that the district court committed no significant

procedural error, such as improperly calculating the guidelines range. United

States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009). If the sentence is

9

procedurally reasonable, we determine whether it is substantively reasonable as well. United States v. Gonzalez, 550 F.3d 1319, 1323–24 (11th Cir. 2008). But when the district court states that it would have imposed the same sentence regardless of the alleged guidelines range calculation error, we need only determine whether the court's alternative reasoning for imposing that sentence is reasonable. See United States v. Keene, 470 F.3d 1347, 1349–50 (11th Cir. 2006); see also United States v. Williams, 431 F.3d 767, 775–76 (11th Cir. 2005) (Carnes, J., concurring).

Here we need only determine whether the court's imposition of the 70-month prison term was substantively reasonable because the district court stated that it would have imposed that prison term regardless of whether it had imposed the 2 criminal history points at issue. The court said:

> This is a different case, and it is a case in which—even had I ruled in your favor on the—on the revocation issue and it reduced the guideline range, I consider and feel that a 70-month sentence is reasonable. This is a case in which the defendant was convicted in a drug case and was deported. The defendant then returns to this country and is, in fact dealing drugs. . . . That factor is an aggravating circumstance, in my opinion.

Our reasonableness review is guided by the factors provided by Congress in 18 U.S.C. § 3553(a). United States v. Pugh, 515 F.3d 1179, 1188–89 (11th Cir.

10

2008).  The district court is required to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" listed in 18 U.S.C. § 3553(a).  18 U.S.C. § 3553(a).  That includes the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment of the offense, deter criminal conduct, protect the public from the defendant's future criminal conduct, and provide the defendant with needed educational or vocational training or medical care.  Id. § 3553(a)(2).  Among other factors, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the applicable guidelines range, and the need to avoid unwarranted sentencing disparities.  See id. § 3553(a)(1), (4), (6).  But the court need not discuss each factor, United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005), and the burden of establishing that a sentence is unreasonable lies with the party challenging it.  Pugh, 515 F.3d 1189.

Even assuming the district court made a procedural error in calculating Mojica-Leguizamo's criminal history category, he has not demonstrated that the court's reasons for imposing a 70-month prison term are unreasonable.  The government argued at the sentence hearing that this was Mojica-Leguizamo's second felony conviction in federal court for conduct related to drug trafficking, and it asked the court to impose a 71-month sentence.  The district court observed

that in addition to Mojica-Leguizamo's two federal felony convictions, he also had convictions in Georgia state court for drug trafficking offenses. The record indicates that the court properly considered the § 3553(a) factors. Although a 70-month prison term is greater than the guidelines range of 46–57 months that Mojica-Leguizamo contends is correct, that prison term is well below the maximum statutory prison term of 20 years. See 8 U.S.C. § 1326(b)(2); Gonzalez, 550 F.3d at 1324 (holding that a defendant's sentence was reasonable in part because it was well below the statutory maximum). And the district court commented that it "seriously considered going above the guidelines" in this case. The district court's imposition of a 70-month prison term was reasonable.

IV.

Finally Mojica-Leguizamo argues, and the government concedes, that the record does not reflect a reasoned basis for the imposition of a $2,000 fine. We agree. The district court adopted the PSR as its findings, and neither party presented other evidence of Mojica-Leguizamo's ability to pay a fine. And although the district court imposed a below-guidelines fine, it did not respond to Mojica-Leguizamo's objection to that fine. See United States v. Gonzalez, 541 F.3d 1250, 1256 (11th Cir. 2008) (vacating a fine because the record did not reflect a reasoned basis for its imposition where the PSR "provided a detailed financial

12

analysis of the defendant's assets and concluded that he lack[ed] the ability to pay a fine in addition to mandatory restitution" and the district court did not provide an explanation of the fine after the defendant objected to its imposition).

V.

For the foregoing reasons we reverse the district court's order revoking Mojica-Leguizamo's supervised release, affirm the district court's imposition of a 70-month prison term, and vacate the district court's imposition of a $2,000 fine and remand the case for the limited purpose of determining whether there is a reasoned basis for the imposition of a fine.

**REVERSED IN PART. AFFIRMED IN PART. VACATED AND REMANDED IN PART.**